NEAL M. BROCK v. DAN HARDIE, Sheriff Dade County, and RALPH DILLON, Constable.

154 So. 690.

Division A.

Opinion Filed May 3, 1934.

*Spalding, McDougald & Sibley* (Atlanta, Ga.), *McKay, Dixon & DeJarnette* and *Marion E. Sibley,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, *H. E. Carter,* Assistant Attorney General, *Vernon Hawthorne,* State Attorney, *Fred Pine,* County Solicitor, and *Harry Gordon,* for Defendants in Error.

ELLIS, J.—Neal M. Brock was arrested upon a warrant issued by a Justice of the Peace for Dade County in which Brock was charged in eight counts with a violation of the

"Florida anti-trust statute" which constitutes Article 12, Part 1, Title II, Chapter X, of the Compiled General Laws, 1927, embracing Sections 7944 to 7954, inclusive.

The warrant charged that Brock was manager of an "association or (the) subsidiary of an association" whose purpose was to "carry out restrictions in the full and free pursuit of the business of fire insurance in the State of Florida," and that he acted in pursuance of a combination of two or more fire insurance corporations which had entered into stipulations to that end.

Each count charged that Brock acted in pursuance of the combination; *first,* to create or carry out restrictions in the full and free pursuit of the business of fire insurance; *second,* to "increase the price," or rates of fire insurance; *third,* to "prevent competition in the sale of fire insurance"; *fourth,* to "fix at a certain standard or figure," the exact amount being unknown, whereby the rate or rates of fire insurance to the public in Dade County, Florida, was in some manner unknown to affiant controlled or established; *fifth,* "to make or enter into or execute or carry out a contract, obligations or agreement by which certain fire insurance corporations, whose identity" is unknown to affiant "have bound themselves not to sell fire insurance" in Dade County "below a common standard figure"; *sixth,* to "execute or carry out a contract" by which the insurance companies "have agreed in some manner" unknown to affiant "to keep the price, rate or rates of fire insurance" in Dade County "at a fixed or graduated figure;" *seventh,* to "execute or carry out a contract, obligation or agreement by which certain fire insurance corporations" whose identity is unknown "have established or settled the price, rate or rates of fire insurance" in Dade County "between themselves and others to preclude a free and unrestrained competition

among themselves and others in the sale of fire insurance" in the County; and, *eighth,* to "execute or carry out a contract, obligation or agreement by which certain fire insurance corporations," identity unknown "have agreed to pool, combine or unite their interests that they have in connection with the sale of fire insurance" in Dade County "in such manner that the price, rate, or rates of fire insurance" in Dade County "was offered to the public by such combination and the members thereof at a certain standard or graduated figure or figures" the exact amount being unknown to affiant.

That count contained an alternative charge in the following words: "or aided or advised in the creation or carrying out of such combination" by maintaining as such manager for the purposes of the combination the office described as "Florida Inspection & Rating Bureau."

The substance of the charge is that certain fire insurance corporations whose names are unknown to the prosecutor have entered into an agreement between themselves for the purpose of prescribing a rate for fire insurance in Dade County and that the accused Brock is aiding, co-operating with, and furthering the purpose of that alliance between the fire insurance companies by managing and operating the office known as Florida Inspection & Rating Bureau.

He applied for and obtained a writ of habeas corpus and sought his release from custody upon the grounds that Sections 7944 to 7954, *supra,* are void as being in contravention of the Constitutions of the United States and the State of Florida, that the said sections of the law are so indefinite and uncertain as to furnish no ascertainable standard of guilt and that the warrant charged no offense against the laws of Florida.

Upon the hearing the circuit judge remanded the petitioner to the custody of the sheriff, whereupon Brock took a writ of error from this Court to review that judgment.

The sections of the statute attacked in this case first define the word "Trusts" to be a combination of capital, skill or acts by two or more persons, firms, or corporations or associations of persons, or either two or more of them, for either, any or all of the following purposes: first, to create or carry out restrictions in trade or commerce or aids to commerce, or to create or carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this State;

"2. To increase or reduce the price of merchandise, produce or commodity.

"3. To prevent competition in manufacture, making, transportation, sale or purchase of merchandise, produce or commodities, or to prevent competition in aids to commerce.

"4. To fix any standard or figure, whereby its price to the public shall be in any manner controlled or established, any article or commodity or merchandise, produce or commerce intended for sale, use or consumption in this State.

"5. To make or enter into or execute or carry out any contract, obligation, or agreement of any kind or description by which they shall bind or have bound themselves not to sell, dispose of or transport any article or commodity or article of trade, use, merchandise, commerce or consumption below a common standard figure, or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed or graded figure, or by which they shall in any manner establish or settle the price of any article or commodity or transportation between them or themselves or others to preclude a free and unre-

stricted competition among themselves or others in the sale or transportation of any article or commodity, or by which they shall agree to pool, combine or unite any interest they may have in connection with the sale or transportation of any such article or commodity that its price might in any manner be affected.

"Provided, however, that no agricultural or horticultural non-profit co-operative association heretofore organized and incorporated or hereafter to be organized and incorporated under the laws of the State of Florida nor the members, officers, agents or employees thereof or any of them, as such, shall be deemed to be a trust or a combination in restraint of trade or an illegal monopoly or an attempt to lessen competition or fix prices arbitrarily, nor shall the marketing contracts or agreements between any such association and its members, or between any two or more of such associations, be deemed to be a trust, or be considered illegal or in restraint of trade."

Sections 7945, 7946 and 7947, C. G. L., 1927, provide for forfeiture of the charter of any corporation violating the provisions of the Act; proceedings by the Attorney General in quo warranto for the forfeiture of the charters, and the denial to any foreign corporation of the right to do business in this State and prescribing the duty of the Attorney General to enforce the provisions of the Act by proceedings in injunction against the foreign corporations violating the provisions of the Act.

Section 7948, C. G. L., provides the penalty to be imposed upon any person who "shall be or may become engaged in any combination of capital, skill or acts by two or more persons, firms, corporations, or associations of persons, or of either two or more of them, for either, any or all" of the purposes set out in the Act.

Section 7949, C. G. L., relates to the sufficiency of the indictment's allegations. Section 7950 prescribes a rule of evidence in such prosecutions. Section 7951 provides for criminal liability of non-residents, committing violations of the law. Section 7952 provides for a penalty of $50.00 for each day in which violation of the law may be committed and requires the Attorney General and State Attorneys to "prosecute for and recover the same" in the name of the State. Section 7953 provides that any agreement made in violation of the Act shall be void and not enforceable in law or equity, and Section 7954 provides for the issuing of subpoenas *ad testificandum* by the "tribunal having jurisdiction of the offense" or the Attorney General or any State Attorney or County Solicitor or grand jury to witnesses to testify as to violation of any provision of the Act.

Counsel for petitioner contended that the statute does not expressly cover the business of fire insurance; that it furnishes no ascertainable standard of guilt; that the charge against the petitioner in the exact language of the statute is insufficient because no facts are alleged which tend to show that the alleged restraint of trade is unreasonable in its scope and detrimental to public welfare and obnoxious to public policy; that the statute denies to the petitioner the equal protection of the law because it exempts from its provisions co-operative marketing associations as shown by the last paragraph to Section 7944, *supra,* and Section 6509, C. G. L., including the amendment by Chapter 14554, Laws of 1929, as also by Section 6489, C. G. L., and other sections of the law relating to co-operative marketing associations.

Contracts that were in unreasonable restraint of trade were not unlawful at common law in the sense of being criminal or giving rise to a civil action for damages in favor of one prejudicially affected thereby but were simply void,

and not enforceable by the courts. Statutes of the character of the one under consideration in this case, modeled as they are upon the Federal Act of 1890 entitled "An Act to protect trade and commerce against unlawful restraints and monopolies," have the effect to render such contracts unlawful in an affirmative or positive sense and punishable as a misdemeanor.

The people have generally conceived it to be true that not all covenants in restraint of trade were unlawful but there were some such covenants which were an incentive to industry and honest dealing in trade. Changed conditions under which people have ceased to be so entirely dependent for a livelihood on pursuing one trade have tended to modify the original conception of the harmfulness of such contracts as affecting the public to such an extent as to render necessary the enforcement of the rule.

The test seems now to be whether there is a contract in which there is a main purpose, legitimate of course, to which the covenant in restraint of trade is merely ancillary, in such cases the restraint is not invalid but if such restraint exceeds the necessity presented by the main purpose of the contract it is invalid and is within the denunciation of the statute against "Trusts or contracts in restraint of trade." A most exhaustive history of the subject and learned discussion of the purposes and scope of such Acts, particularly as applied to the Federal Act, appears in an opinion by Judge TAFT in the Circuit Court of Appeals in which Circuit Judges HARLAN and LURTON participated. See U. S. v. Addyston Pipe & Steel Co., 85 Fed. Rep. 271, 29 C. C. A. 141; Addyston Pipe & Steel Co. v. United States, 175 U. S. 211, 44 L. Ed. 136, 20 Sup. Ct. Rep. 96.

The terms of the Florida statute describe the acts which it intends to punish with as much certainty as the Colorado

statute which was under consideration in the case of Cline v. Frink Dairy Co., 274 U. S. 445, 71 L. Ed. 1146, 47 Sup. Ct. Rep. 681, without the provisions in the Colorado statute which rendered that statute void in the opinion of the court. The provisos in the Colorado statute introduced into the subject so much of uncertainty as to obliterate the line between lawfulness and criminality in the court's view of the Act. Such an exception, said Mr. Chief Justice TAFT, "leaves the whole statute without a fixed standard of guilt in an adjudication affecting the liberty of the one accused. An attempt to enforce the section will be to penalize and punish all combinations in restraint of trade in a commodity when in the judgment of the court and jury they are not necessary to enable those engaged in it to make it reasonably profitable, but not otherwise." "The real issue which the proviso would submit to the jury would be legislative, not judicial. To compel defendants to guess on the peril of an indictment whether one or more of the restrictions of the statute will destroy all profit or reduce it below what would be reasonable, would tax the human ingenuity in much the same way as that which this Court refused to allow as a proper standard of criminality in International Harvester Co. v. Kentucky, 234 U. S. 216, 232, 233, 58 L. Ed. 1284."

The Florida statute is encumbered by no such provisions or exceptions. Whether the words of the Florida statute are sufficiently explicit to inform those who are subject to its provisions what conduct on their part will render them liable to its penalties is the test by which the statute must stand or fall, because as was stated in the opinion above mentioned "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ

as to its application violates the first essential of due process of law."

Such seems to be the test approved by the Supreme Court of the United States. Citation of authorities as to what may be considered the exact meaning of the phrase "so vague that men of common intelligence must necessarily guess at its meaning," so that certain conduct may be considered within or outside the true meaning of that phrase, or what language of a statute may lie within or without it, would be of little aid to us.

We must apply our own knowledge with which observation and experience have supplied us in determining whether words employed by the statute are reasonably clear or not in indicating the legislative purpose, so that a person who may be liable to the penalties of the Act may know that he is within its provisions or not.

The Sherman Anti-Trust Law which made every contract and all monopolies in restraint of trade or commerce invalid was held in Nash v. United States, 229 U. S. 373, 57 L. Ed. 1232, 33 Sup. Ct. Rep. 780, to fix a permissible and ascertainable standard of guilt.

The language of the Florida statute contains words that answer to the demand for a meaning well enough known to enable a person of ordinary knowledge of the language and customs and conditions of trade to understand what conduct would lie within and what without its restrictions.

We are of the opinion, therefore, that the language sufficiently describes for purposes of a criminal statute the acts which it intends to punish.

We are likewise of the opinion that the exemptions contained in the proviso of agricultural and horticultural nonprofit co-operative associations from the restrictions of the Act do not deny to the accused, the plaintiff in error here,

the equal protection of the law and due process of law. It is true that farmers and persons engaged in agricultural pursuits are not recognized as forming a separate class within the limits allowed by the Federal Constitution securing to all the equal protection of the laws, thus permitting their exemption from the provisions of statutes purporting to prohibit the formation of trusts for the purpose of fixing the price or regulating the production of articles of commerce. Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 46 L. Ed. 679, 22 Sup Ct. Rep. 431. See also Brown v. Jacobs Pharmacy Co., 115 Ga. 429, 41 S. E. Rep. 553, 57 L. R. A. 547.

In other cases, however, the classification has been justified on the theory that farmers and stock raisers when acting within their limited sphere of immunity from the statutory penalties had but few opportunities and slight facilities for impairing competition and controlling prices while those of many other pursuits had such opportunities and facilities without limit. See 6. R. C. L. 402.

Upon the subject of what constitutes a proper classification in statutes of the character under consideration in this case there are many views in almost irreconcilable conflict. It is possible that the cases may be reconciled on some principle not yet so clearly defined as to make a certain, definite, unvarying rule embracing the thought that the distinction must have a just relation to the legislative object in view.

The Fourteenth Amendment does not strip the State of its power to exert its lawful police power. The power to classify is not taken away by the operation of the equal protection clause; therefore, a wide scope of legislative discretion may be exerted in classifying without conflicting with the constitutional prohibition. Magoun v. Illinois

Trust & Savings Bank, 170 U. S. 283, text 294, 42 L. Ed. 1037, text 1043, 18 Sup. Ct. Rep. 594.

It was said in Orient Ins. Co. v. Daggs, 172 U. S. 557, 43 L. Ed. 552, 19 Sup. Ct. Rep. 281, that it was sufficient to satisfy the demand of the Constitution if a classification was practical and not palpably arbitrary. In classifying persons and things upon whom and on which the law shall operate to include them in its provisions or exclude them therefrom the Legislature is not confined to minute consideration of the distinction which may arise from accidental circumstances. There is no precise application of the rule of reasonableness of classification. There cannot be an exact exclusion or inclusion of persons or things. Louisville & N. R. R. Co. v. Melton, 218 U. S. 36, 54 L. Ed. 921, 30 Sup. Ct. Rep. 676, 47 L. R. A. (N. S.) 84.

The unlawful discrimination complained of in this case which, as counsel contend, invalidates the Act is found in the sub-paragraph to paragraph 5 of Section 7944, C. G. L., excluding from the terms of the Act "agricultural or horticultural non-profit co-operative associations," and by Section 6467, C. G. L., defining "agricultural products" to include "horticultural, viticultural, forestry, dairy, live stock, poultry, bee and any farm products" as proper subjects for co-operative marketing associations, and Section 6509, C. G. L., providing for the organization of non-profit co-operative associations for the production, preserving, drying, packing, canning, bottling, shipping or marketing of agricultural, viticultural or horticultural products, or in the manufacture or preparation of any confection, extracts, oils, juices or by-products, and that they shall not be deemed to be a combination in restraint of trade or an illegal monopoly or an attempt to lessen competition or fix prices arbitrarily, nor shall the marketing contracts or agreements between the

association and its members or any agreements authorized in that provision of the law be considered illegal or in restraint of trade, and by Section 6489, C. G. L., which provides that no organization under the co-operative marketing association to encourage and promote intelligent and orderly marketing of agricultural products shall be deemed to be a combination in restraint of trade or an illegal monopoly, nor an attempt to lessen competition or fix prices arbitrarily, nor that the contracts and agreements between the associations and its members shall be considered illegal or in restraint of trade. Section 6509, *supra,* was amended by Chapter 14544, Laws of 1929, which included the production and marketing of sponges as exempt from the anti-trust statutes.

In applying the anti-trust laws of the State embraced in Sections 7944 to 7954, C. G. L., *supra,* to any given situations Sections 6467, 6509, C. G. L., and Chapter 14544, *supra,* must be considered as in *pari materia* in so far as the latter provide for exemptions and exceptions from the provisions of the former. The many exemptions from the provisions of the anti-trust laws of this State, of capital and skill engaged in the activities described in the latter statutes leave a comparatively small field in which the laws against unlawful combinations in restraint of trade may operate. The co-operative associations engaged in those many activities do not prevent the operation of the statute upon unlawful combinations which operate in restraint of trade and to the injury of the public interest although such unlawful combinations may be of persons and capital and skill in the manipulation of business controlling the supply and prices of the commodities described in the exempting statutes and provisions.

Orderly, systematized co-operative marketing associations which are authorized to prevent a sacrifice of the products described in the exempting statutes and to realize reasonable profits thereon have no analogy to financial combinations in restraint of trade and by a parity of reason no analogy to combinations of skill and labor in the same enterprises to accomplish the same lawful purposes. Tobacco Growers' Co-op. Ass'n v. Jones, 185 N. C. 265, 117 S. E. Rep. 174, 33 A. L. R. 231.

Statutes enacted to prevent and punish unlawful combinations in restraint of trade are an evolution from the common law of monopolies which originally implied a grant from the sovereign power. See National Cotton Oil Co. v. Texas, 197 U. S. 115, 49 L. Ed. 689, 25 Sup. Ct. Rep. 379.

It is now, said Mr. Justice McKenna in the above cited case, understood to include a condition produced by the acts of mere individuals. Such a monopoly is created when as a result of the efforts to that end previously competing businesses are so concentrated in the hands of a single person or corporation or group that they have power practically to control the prices of commodities and thus practically suppress competition. See 41 C. J. 83.

At common law monopolies were considered odious and inimical to public welfare. Whether created by governmental grant or by acts of private parties, persons or corporations, their purpose is to produce a situation or condition of trade and commerce inimical to the general welfare in the suppression of competition and the deprivation of many persons of their means of livelihood to the advantage and individual financial gain of the persons creating the monopoly. Those combinations are commonly called trusts.

The purpose of co-operative marketing associations is different. Their design is to promote industries, conserve

the interests of the producers of the commodities and secure markets for the produce to the end that the consumers may obtain such commodities at reasonable prices while the producer obtains a fair and reasonable return upon his investment and activities. Their existence is founded upon an economical necessity. Artificial scarcity of commodities is not designed to be produced nor to unreasonably increase the cost of the articles produced but on the contrary to serve a useful and needed service to the community and producer in making provision for a liberal supply and the prevention of a flooding of the market. 41 C. J. 166.

Such organizations have generally been held to be valid and not in conflict with laws against unlawful combinations in restraint of trade nor in violation of equal protection and due process clauses of the Federal Constitution. Warren v. Alabama Farm Bureau Cotton Ass'n, 213 Ala. 61, 104 South. Rep. 264; Minnesota Wheat Growers Co-op. Marketing Ass'n v. Huggins, 162 Minn. 471, 203 N. W. Rep. 420; Owen Co. Burley Tobacco Soc. v. Brumback, 128 Ky. 137, 107 S. W. Rep. 710; Poultry Producers of Southern California v. Barlow, 189 Cal. 278, 208 Pac. Rep. 93; Oregon Growers' Co-op. Ass'n v. Lentz, 107 Or. 561, 212 Pac. Rep. 811.

While industrial co-operative marketing societies may be subject to the laws concerning combinations and contracts in restraint of trade, they have been, to the extent of the commodities and activities mentioned in the exempting statute heretofore mentioned, exempted from the operation of those laws.

The conclusion we reach, therefore, is that the anti-trust statute of this State is not rendered invalid by the alleged illegal discrimination in favor of the commodities handled by or produced by the co-operative marketing associations

nor by the exemptions of such associations from the operation of the Act.

The rule of reason, as applied to the anti-trust statute in Massari v. Salciccia, 102 Fla. 847, 136 South. Rep. 522, applies with equal force to the exemptions from the operation of the statute of those provisions of the law exempting co-operative marketing associations.

The third question presented in the briefs is whether the warrant is defective in failing to allege that the restraint of trade charged was unreasonable in its scope to the point of being injurious to public welfare. That question is a valid criticism of the charge as made.

The facts alleged are so meager that even if the alleged contract were obnoxious to the statute as being in relation to trade or commerce or in relation to restrictions in the full and free pursuit of any authorized business, neither the court nor the accused is advised as to what facts exist or what conduct of the accused is deemed to be in unlawful restraint of trade. From anything to the contrary alleged the accused simply maintains a research and information bureau of which the unknown corporations may avail themselves as a means for obtaining data as to the location, character and environment of each insurance risk before applying the agreed rate to the particular contract of insurance.

There is nothing invalid in such an arrangement, besides it is conceivable that such aid to necessary information may be of great value to the insurance companies in the saving of necessary expenses involved in obtaining such information on each application for insurance or the expense to each company of compiling all such necessary data which would reasonably be reflected in the insurance premium rate.

To compel the accused engaged in managing such an information bureau to guess on peril of an indictment whether his activities and information furnished to his employers will be deemed by a jury to be pursuant to an unlawful combination in restraint of trade to the extent of detriment to the public interest is to exact of him an unreasonable exercise of superlative gifts which it is doubtful if any person possesses.

The next question challenges the validity of the warrant on the ground that the anti-trust statute under which the accusation was brought embraces within its terms five insurance companies, so as to prevent such companies from agreeing upon the classification of fire hazards for insurance contracts.

A combination among insurance companies or their agents to fix and control rates of insurance has been held not to constitute an indictable conspiracy at common law. Aetna Insurance Co. v. Commonwealth, 106 Ky. 864, 51 S. W. Rep. 624, 45 L. R. A. 355.

Insurance is not an article of merchandise or manufacture, nor one of the necessities of life. Insurance is not a subject of trade and barter offered in the market as something having an existence and value independent of the parties to the contracts. The business of insurance does not generally appertain to commerce. Hooper v. State, 155 U. S. 648, 39 L. Ed. 297, 15 Sup. Ct. Rep. 207.

It is a mere contract of indemnity against contingent loss. Though it is an important aid to commerce it is not a business of commerce or trade to which by the doctrine of *noscitur a sociis* the words "any business authorized or permitted by the law" must be confined in meaning, nor is it a business in which the public has any direct right. See Queen Ins. Co. v. State, 86 Tex. 250, 24 S. W. Rep. 397,

22 L. R. A. 483; Harris v. Commonwealth, 113 Va. 746, 73 S. E. Rep. 561, 38 L. R. A. (N. S.) 458.

There are conflicts in the views of different courts as to whether the words as used in statutes similar to the Florida statute defining trusts include fire insurance. The truth is that in the great number of judicial opinions so-called authority may be found upon each side of probably any question. In this dilemma a court is sometimes obliged to elect which line of authority it will follow. So on the question whether fire insurance contracts are included within the terms of our statute prohibiting combinations in restraint of trade or commerce or restrictions in the full and free pursuit of any business authorized by the laws of this State, we say that the history of monopolies, the evolution of statutes enacted to prohibit unlawful combinations in restraint of trade and the character of the insurance business and conditions on which a policy may be obtained, convince us that fire insurance companies are not included within the meaning of the words of our statute.

It is true that insurance has become a matter of great convenience to a large part of the public. It is almost a business necessity, certainly commending itself to the prudent man who "looketh well to his going," but our view is that insurance is neither produced, consumed, manufactured, transported nor sold in the ordinary signification of those words as they are used in our statutes against unlawful combinations in restraint of trade.

. The discussion of the subject by Judge Gaines of the Supreme Court of Texas in Queen Ins. Co. v. State, *supra,* is full and convincing to our judgment, and apparently so to the Supreme Court of Virginia, which quoted his language with approval in Harris v. Commonwealth, *supra.*

The judgment is reversed and the petitioner hereby discharged from custody.

DAVIS, C. J., and TERRELL, J., concur,

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.