ERVIN, Justice
(concurring specially):
I concur in the majority opinion, but I am also of the view that we should hold the statute, F.S. Section 870.01(2), F.S.A., facially unconstitutional.
The statute is couched oversimplistically and does not bother to provide any definitions of its critical words or attempt to delimit their overbroad application. It is altogether unlike the federal anti-riot statute, 18 U.S.C. §§ 2101, 2102, which painstakingly informs citizens by precise definitions the meaning and limits of the words, “riot”, “inciting”, “organizing, promoting, encouraging, participating in, or carrying on a riot”. The federal statute is specifi *37 cally limited to exclude proscription of oral or written advocacy of ideas or expression of belief. 18 U.S.C. § 2102. The Florida statute contains nothing therein to restrict its use of the word “riot” to the context of a clear and present danger of an immediate public disruption.
From its broad language, all those who conceivably will be involved in the statute’s reach, the citizens, the police, the prosecutor, the judge, defense counsel, the jury, must attempt to guess at its scope and intent as a penal statute. Particularly the nebulous words “inciting or encouraging a riot” which are the crux of the Appellant’s offense, give meaning trouble. For example, is the obscene language which the information charged Appellant uttered sufficient in itself to constitute incitement to riot within the meaning of the statute? Or was there incitement because Appellant shouted that his brothers would stop him from being put in the [patrol] car. That the language Appellant used is obscene is obvious, but obscene language may repulse aesthetic feelings without resulting in public disorder. There may be public tumult, uproar, even disorder, without the same reaching the proportions of an illegal riot as dictionarily defined or as defined in the cited federal statute. For example, honking one’s automobile horn in congested traffic which is police stopped is loud sound, not incitement to riot.
The statute is silent as to the number of persons necessary for an affray or riot. It does not attempt by guidelines to distinguish between disorderly conduct — breach of the peace — of an individual or individuals — a misdemeanor; and a riot of a larger number of persons — a felony. It draws no distinction between innocent and harmful expression. It does not attempt to warn the citizen of the boundary between protected ^nd unprotected speech under the First Amendment.
The statute as well as the information filed in this case leaves these nebulous problems to the guesswork of the police, the prosecutor, the judge, the defense attorney and the jury — with the possibility of an after-the-fact shoring up or demolition of the lower court result at the appellate level. All of this places the “cart before the horse.” The citizen should have statutory due notice, warning in advance of what he’s up against in this matter of illegal rioting versus the exercise of basic speech freedoms and abuse thereof without being compelled to await judicial amendment of the penal legislation to ascertain what the Legislature intended. In other words, simple, everyday due process. The Florida statute does not appear to give it.
It is almost supererogation to cite from the numerous cases which have tried to explicate the law relating to vagueness and overbreadth of statutes that impinge-;, upon basic freedoms. Nevertheless, we note Connally v. General Construction Co. (1926), 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322, in which the United States Supreme Court gave constitutional significance to the commonsense requirement that criminal laws convey with specificity a definite warning as to the conduct they proscribe. This case was followed by the leading Florida case of Brock v. Hardie (1934), 114 Fla. 670, 678-679, 154 So. 690, 694, which holds that statutory language must be sufficiently explicit to inform as to what conduct renders one liable to criminal penalty. It is elementary that in order for a penal statute to be valid, “the crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue.” Connally v. General Construction Co., supra, 269 U.S. at 393, 46 S.Ct. at 128.
The lack of standard or guidelines in the Florida statute is appalling. The police officer is left at sea as to numerous conceivable situations which may or not come within the ambit of the statute. If, for example, a class of students is shouting when marching along conducting themselves boisterously, interfering with traffic, are they rioting? Compare Shuttlesworth *38 v. City of Birmingham (1969), 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162, and In re Fuller (Fla.1971), 255 So.2d 1.
The Florida statute fails to require scienter. The fact a riot statute fails to excuse a speaker from blame where his utterances were unintended to cause a riot among his overreacting audience renders it constitutionally suspect. Ashton v. Kentucky (1966), 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469. Gregory v. City of Chicago (1969), 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134. Psychological studies demonstrate that often no malice or criminal intent is involved in confrontations between demonstrators and the police. Psychological or emotional factors sometimes surface, causing public disturbance. Examples are: the desire for significance, affronts to police pride and self-esteem, the desire to dominate personally irrespective of the freedom of a group to assemble and give expression to their hopes or fears. See Power and Innocence by Rollo May, Chapter 1.
There is no requirement in the statute that a riot must ensue before one may be accused of incitement and encouragement. For aught that appears in the statute, one may be informed against for inciting and encouraging a riot without one eventuating. Cf. Brandenburg v. Ohio (1969), 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430.
Our Florida Constitution guarantees that “[n]o law shall be passed to restrain or abridge liberty of speech . . .” Fla. Const. Art. I, Sec. 4, F.S.A.; U.S.Const. Amend. I. Section 870.01(2) leaves the citizen in doubt as to his liberty of speech because of its sheer lack of standards. The Legislature can quite easily remedy these deficiencies and should do so if it considers other pertinent laws already held valid do not fill the breach.
Bafflingly vague as to its potential application to many forms of expressions that might provoke disorder, the statute’s most serious defect is its failure in apt words to exempt constitutionally protected speech from the scope of its sanction. Such failure seems to fly in the face of Schenck v. United States (1919), 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470, and Bridges v. California (1941), 314 U.S. 252, 263, 62 S. Ct. 190, 86 L.Ed. 192. There must be a “clear and present danger” in any words of incitement. Thus a speaker’s cry for warfare in the streets or to burn city hall which evokes only a response of laughter from his audience would not intrinsically amount to a criminal utterance. See Kiiskila v. Nichols, 433 F.2d 745 (7th Cir.1970). Compare Terminiello v. City of Chicago (1949) 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131, and Tinker v. Des Moines School District, 393 U.S. 503, 508-509, 89 S.Ct. 733, 21 L.Ed.2d 731; Ashton v. Kentucky, supra, 384 U.S. at 200, 86 S.Ct. 1407, 16 L.Ed.2d 469; and NAACP v. Button (1963) 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405.
To conclude, the statute on its face is shockingly vague and overbroad! It lacks definitions and limitations. It leaves to guesswork boundaries between protected and unprotected speech. It is of the same category of vague statutes as our now departed Florida statute on vagrancy — and possibly our highly suspect disorderly conduct statute. In an age where more and more emphasis is placed upon the protection and enjoyment of civil liberties, Section 870.01(2) fails to satisfy constitutional tests. Our democratic institutions require for their preservation laws of sufficient clarity in order that we may be a government of laws and not of the tyranny of men.
ROBERTS, J., dissents.