334 So.2d 661 (1976)
JORDAN CHAPEL FREEWILL BAPTIST CHURCH, a Florida Corporation, et al., Appellants,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, Appellee.
No. 75-1275.
District Court of Appeal of Florida, Third District.
June 22, 1976.
Rehearing Denied July 29, 1976.
*662 Joel Hirschhorn, Angus M. Stephens, Miami, for appellants.
Stuart Simon, County Atty., and Richard Dunn, Asst. County Atty., for appellee.
Before BARKDULL, C.J., and HENDRY and NATHAN, JJ.
PER CURIAM.
By this appeal, we are called upon to review the following order confirmed by final judgment entered by the trial court. In said order, the court made certain findings of fact and conclusions of law in denying a permanent injunction. Said order reads in part as follows:

* * * * * *
"This is an action for declaratory decree and injunctive relief brought by plaintiff, Jordan Chapel Freewill Baptist Church, Inc., and joined in by thirty-six (36) plaintiff-intervenors (hereinafter referred to along with plaintiff as `plaintiffs'), which challenges the constitutionality of Dade County Ordinance No. 75-50 (hereinafter referred to as the `Bingo Ordinance').[1] This Court has jurisdiction pursuant to 86.011, Florida Statutes. Pursuant to stipulation of counsel, at least one plaintiff or plaintiff-intervenor has standing to challenge the constitutionality of the ordinance in question. The plaintiff filed a Motion for Temporary Injunction and at a hearing on the motion, Dade County agreed to withhold enforcement of the ordinance in question pending final hearing in this cause.
"The plaintiffs base their claim for relief upon the following grounds among others: that Dade County lacks the legal authority to enact the ordinance; that the ordinance conflicts with and is preempted by state law; that the ordinance was not properly enacted; that the ordinance violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; that the ordinance violates the Due Process Clause of the aforesaid Fourteenth Amendment; and that the ordinance was not a valid exercise of the County police power.

"I. THE ORDINANCE
"The ordinance in question was enacted after the Board of County Commissioners of Dade County determined that:
`... present laws governing the operation of bingo games as provided for in Section 849.093, Florida Statutes, are inadequate to ensure that the various charitable, civic, community, benevolent, religious and scholastic organizations receive all the proceeds to which they are entitled under state law; and
`... since monies from bingo games are frequently retained illegally or taken out for non-charitable purposes through such ruses as abnormally high rentals and salaries; and
`... The Board of County Commissioners wishes to ensure effective enforcement of the above-quoted laws regarding "bingo games" and to see that the proceeds from such games pass into the hands of legitimate charitable organizations *663 to be used for legitimate charitable purposes, . ..'[2]
"The ordinance begins with a section defining some of the more significant terms used therein. It also requires:
"1. All operators of bingo games to obtain a valid permit. Several specific items of information regarding the organization and its bingo operations are required to be disclosed prior to receiving the permit.
"2. Owners of premises and/or lessors who provide space to a bingo operator to obtain a permit. Similar information regarding the organization and benefits received from bingo operations must be supplied prior to issuance of the permit.
"3. Operators to maintain records regarding bingo receipts, prizes, expenses and proceeds.
"4. Certain information regarding identification of the charity, gross receipts, and prize money to be awarded to be posted during each session of bingo.
"5. Specified types of playing materials to be used in bingo games and records of material purchases to be maintained.

"II. DADE COUNTY'S POWER TO ENACT THE ORDINANCE
"Dade County is a constitutional home rule county. Article VIII, Section 11, Florida Constitution. Under this constitutional provision, the electors of Dade County are granted the power to adopt a home rule charter of government for Dade County.
"Dade County's Charter, at Section 1.01A, provides in relevant part:
`The Board of County Commissioners shall be the legislative and governing body of the county and shall have the power to carry on a central metropolitan government. This power shall include but shall not be restricted to the power to:
* * * * * *
`21. Exercise all powers and privileges granted to municipalities counties, and county officers by the Constitution and laws of the state, and all powers not prohibited by the Constitution or by this Charter.
`22. Adopt such ordinances and resolutions as may be required in the exercise of its powers, and prescribe fines and penalities for the violation of ordinances.
`23. Perform any other acts consistent with law which are required by this Charter or which are in the common interest of the people of the county.'
"In addition to the above grants of power, Section 1.01B of the Dade County Home Rule Charter provides that enumerated powers include all implied powers necessary and proper to carrying them out. These provisions of the Dade County Charter were expressly validated in Article VIII, Section 6(e) of the 1968 Florida Constitution. There is clear authority in the above-cited sections for Dade County to enact Ordinance No. 75-50.
"There are also other authorities available which authorized Dade County to enact of the bingo ordinance. Section 125.01, Florida Statutes, which establishes the power of legislative bodies in counties, provides that a county shall have the power to:
`(h) Establish, coordinate, and enforce zoning and such business regulations as are necessary for the protection of the public;
* * *
`(t) Adopt ordinances and resolutions necessary for the exercise of its power and prescribe fines and penalities for the violation of ordinances in accordance with law.
* * *
`(w) Perform any other acts not inconsistent with law which are in the common *664 interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law.'
"Further, pursuant to Article VIII, Section 6(f), Metropolitan Dade County is permitted to exercise all powers conferred upon municipalities by general law. Chapter 166.021 (1) provides:
`As provided in § 2(b), Art. VIII of the state constitution, municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law.'
"The allegation in the plaintiffs' complaint which contends that Dade County is without the power to enact the ordinance regulating bingo is unsubstantiated and without merit. Pursuant to the Florida Constitution, the Dade County Home Rule Charter and the Florida Statutes, cited above, Dade County has the power to enact an ordinance regulating the operation of bingo games.

"III. CONFLICT WITH STATE LAW
"The plaintiffs contend that Dade County lacks the authority to enact an ordinance relating to bingo since the state had passed Section 849.093, Florida Statutes, and had thereby preempted the field.
"It is clear that, pursuant to the Florida Constitution, Article VIII, Section 11(5), Dade County has the power to enact legislation, so long as such legislation does not conflict with the Constitution or any applicable general law. Plaintiffs cite Section 849.093, Florida Statutes, a section entitled `Charitable, nonprofit organizations; certain endeavors permitted' and claim that the Dade County Bingo Ordinance is in conflict with the state statute.
"The word `conflict' in Article VIII, Section 11(5) has been construed to mean `contradictory in the sense of legislative provisions which cannot co-exist'. E.B. Elliott Advertising Co. v. Metropolitan Dade County, 425 F.2d 1141, 1150 (5th Cir.1970). State ex rel. Dade County v. Brautigam, 224 So.2d 688 (Fla. 1969). Legislative provisions are inconsistent if, in order to comply with one provision, a violation of the other is required. In the E.B. Elliott Advertising Co. case, the sole test of conflict for purposes of preemption is the impossibility of co-existence of the two laws. Courts are therefore concerned with whether compliance with a County ordinance requires a violation of a state statute or renders compliance with a state statute impossible. In Elliott, a federal court, applying state law, found no conflict between a state statute and a more stringent Dade County ordinance both of which regulated the distance an outdoor sign must be set back from a highway. In Elliott, state law required at least a 15 foot set back and the County ordinance required at least a 200 foot set back. The test to be met in that case was whether it was possible to comply with the County ordinance without violating the state statute.
"A similar situation is presented in the case before the Court. The state law permits certain charitable, nonprofit or other organizations to conduct bingo games only if certain conditions set forth in the section are met. The purpose and effect of Section 849.093 `is merely to eliminate bingo from the gambling chapter when played within the limits of the statute'. Perlman v. State, 269 So.2d 385, 387 (Fla. 4th Dist. 1972). The regulations provided by the state constitute minimum regulations. This Court has not found, and the plaintiff has not cited any language in the statute which can be deemed a prohibition on additional stricter regulations by local government agencies, such as are contained in the Dade County ordinance.
"The Dade County Bingo Ordinance merely supplements the state statute. As in Elliott, supra, it is evident that compliance *665 with the County ordinance is possible without violating state law.
"The Court finds that the ordinance and the statute can co-exist; that there is no conflict between the two enactments; and that the ordinance is, therefore, not unconstitutional under Article VIII, Section 11 (5), Florida Constitution.

"IV. PROPER ENACTMENT OF THE ORDINANCE
"The plaintiffs have alleged that the ordinance and its amendments were not enacted in compliance with Florida Statute 166.041. Dade County contends that Section 166.041 provides a minimum standard to be followed by municipalities when enacting ordinances and it is therefore inapplicable. Dade County also maintains that Section 1.02 in its own Charter constitutes its controlling procedural requirements.
"Regardless of which contention is correct, it is not necessary for the Court to determine exactly which procedural requirements must be followed since the plaintiffs have not established any violation of the requirements of Section 166.041, Florida Statutes. This Court, therefore, finds that no such violation occurred in the enactment of Ordinance No. 75-50 by the Board of County Commissions of Dade County.

"V. FOURTH AMENDMENT
"Plaintiffs allege that the record inspection provisions of the bingo ordinance violate the Fourth Amendment requirement of reasonable searches.[3] The Court finds the plaintiffs' contention without merit.
"In Florida, there is authority to support inspections of licensed premises without warrant. Section 465.131, Florida Statutes, a section of the Florida Pharmacy Act, states:
`The Florida board of pharmacy and its duly authorized agents, members and employees ... shall have the power to inspect in a lawful manner at all reasonable hours any retail drug establishment or other place in the state in which drugs or medical supplies are manufactured, packaged, made, stored, sold, offered for sale, exposed for sale or kept for sale for the purpose:
`(1) Of determining if any of the provisions of this chapter or any regulation promulgated under its authority, is being violated ...'
This statute was held a reasonable exercise of police power in the case of State v. Olson, 267 So.2d 878, (Fla. 2d Dist. 1970), Olson v. State, 287 So.2d 313 (Fla. 1973), reversed on other grounds. The Olson Court distinguished the cases (See v. City of Seattle, 387 U.S. 541, [87 S.Ct. 1737, 18 L.Ed.2d 943] (1967) and Camara v. Municipal Court, 387 U.S. 523, [87 S.Ct. 1727, 18 L.Ed.2d 930] (1967) relied upon by the plaintiff therein and held that in Section 465.131, Florida Statutes, there was:
`[n]othing unreasonable in terms of Fourth Amendment sanctions in permitting officers to enter, without a warrant, a licensed premises for purposes of inspecting all aspects of the licensed activity and to seize any evidence of illegal exercise thereof.' State v. Olson at 880.
"In Colonnade Catering Corp. v. United States, 397 U.S. 72, [90 S.Ct. 774, 25 L.Ed.2d 60] (1970) cited as controlling in Olson, the U.S. Supreme Court held that Congress had broad powers to design inspection laws to regulate the liquor industry. Both Olson and Colonnade are *666 cases dealing with inspections for purposes of regulation in the industries (drug and liquor respectively) `historically and properly subject to strict governmental scrutiny'. Olson at 880. This Court finds authorized gambling to be in the same category.
"Gambling (or authorized gambling in the case of bingo) is an exceptional situation which has always been closely controlled in Florida for the protection of the public. Rodriguez v. Jones, 64 So.2d 278 (Fla. 1953); Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, 37 So.2d 692 (Fla. 1948). This Court is convinced that the area sought to be regulated by the Bingo Ordinance is one in which regulation may be lawfully imposed. The Dade County Grand Jury Report submitted in evidence by the defendant herein states:
`We wish to warn the people of Dade County that Bingo Activities have reached alarming proportions, that charities are being defrauded and that Bingo is not merely a harmless game, but is worthy of serious consideration.'
Final Report of the Dade County Grand Jury, November 12, 1974, at page 205.
"Further, testimony as reflected in the Official Minutes of the Dade County Commission Meeting of March 4, 1975, which were admitted in evidence in this case, point out the need for law enforcement officers to be empowered to inspect records in order to provide effective and protective regulation. In light of the evidence presented, the Court finds that the inspection authorized in the Bingo Ordinance is necessary and proper to protect the public health, safety, welfare and morals in Dade County.
"The County ordinance under scrutiny provides for the inspection of certain specified records. A general search is by no means authorized. The ordinance also contains a proviso that such inspections may be made only at reasonable times during normal business hours as well as a mandate that officers shall not interrupt an actual bingo game in progress unless absolutely necessary for proper inspection.
"The Court therefore holds the provisions of the ordinance whereby officers are permitted to inspect records at reasonable times, not to be in violation of the Fourth Amendment to the United States Constitution. In support of this contention, the plaintiffs suggested to the Court that under the ordinance many different types of law enforcement officers could descend simultaneously upon a bingo parlor and demand to inspect records. This Court is of the opinion that virtually all statutes and ordinances may potentially be abused, but the existence of a mere potentiality for abuse is not a valid basis for a Court to hold a statute unconstitutional. Our society must operate upon the assumption that such abuses will not occur and that if they do, the judiciary remains available to those abused for appropriate reddress.

"VI. FIFTH AMENDMENT
"The plaintiffs further maintain that the record keeping provisions of the ordinance violate their privilege against self-incrimination under the Fifth Amendment to the U.S. Constitution. They rely upon the cases of Marchetti v. U.S., 390 U.S. 39 [, 88 S.C. 697, 19 L.Ed.2d 889] (1968), Grosso v. U.S., 390 U.S. 62 [, 88 S.Ct. 709, 19 L.Ed.2d 906] (1968), and Haynes v. U.S., 390 U.S. 85 [, 88 S.Ct. 722, 19 L.Ed.2d 923] (1968), which they contend provide a legal basis upon which this Court should declare the Bingo Ordinance unconstitutional on Fifth Amendment grounds.
"However, the above cases are inapplicable to the case at bar. The case of Shapiro v. U.S., 335 U.S. 1 [, 68 S.Ct. 1375, 92 L.Ed. 1787] (1948), which is relied upon by the County is controlling in the case at bar. It holds that the Fifth Amendment *667 privilege against self-incrimination does not apply to:
`... records required by law to be kept in order that there may be suitable information of transactions which are appropriate subjects of governmental regulation, and the enforcement of restrictions validly established.' Shapiro v. United States, 335 U.S. 1, 17 [, 68 S.Ct. 1375, 92 L.Ed. 1787] (1948); Wilson v. United States, 221 U.S. 361, 380 [, 31 S.Ct. 538, 55 L.Ed. 771] (1911); Davis v. United States, 328 U.S. 582, 589 [, 66 S.Ct. 1256, 90 L.Ed. 1453] (1946).
"The privilege against self-incrimination which exists as to private papers cannot be claimed with regard to documents required to be kept by law. Even the dissent in the Davis case, supra, stated that `there is an important difference in the constitutional protection afforded their possessors between papers exclusively private and documents having public aspects'.
"The Marchetti, Grosso and Haynes cases involved instances where the production of records required to be kept by statute would automatically result in a criminal conviction. In the ordinance involved in this cause production will not automatically result in conviction. Based upon the Courts' review of the ordinance and the evidence presented, the Court finds the records to be of the type normally kept in a business and may be inspected in order to carry out effective regulation. The ordinance does not fall within the exceptions of the Shapiro rule argued by the plaintiffs.
"The records required to be maintained under the bingo ordinance are necessary as an appropriate regulation, since gambling is an appropriate subject of governmental regulation. The Dade County Commission determined that the maintenance of the records was required for effective regulation of bingo activities. The Court finds that the records required to be maintained under the ordinance may be inspected without violation of the Fifth Amendment privilege against self-incrimination.

"VII. POLICE POWER AND DUE PROCESS
"In their Amendment to the Complaint, plaintiffs allege that the Dade County Commission did not take any testimony or other evidence to justify the legislative findings contained in the ordinance. Therefore, plaintiffs argue that Dade County arbitrarily, capriciously and irrationally exercised its police power.
"It is clear that local government may, under the police power, regulate and restrain activities which threaten the public health, safety and welfare. Carter v. Town of Palm Beach, 237 So.2d 130 (Fla. 1970); Perry Trading Company v. City of Tallahassee [128 Fla. 424,] 174 So. 854 (Fla. 1937)
"In enacting the bingo ordinance the County Commission found that:
`... present laws governing the operation of bingo games ... are inadequate to insure the various charitable, civic, communicy, benevolent, religious and scholastic organizations receive all the proceeds to which they are entitled under state law.' Ordinance No. 75-50 at 2.
"Further, the Commission found that:
`... monies from bingo games are frequently retained illegally or taken out for non-charitable purposes through such ruses as abnormally high rentals and salaries ...'
Ordinance No. 75-50 at 2.
"As a result of these findings the Commission enacted the bingo ordinance to ensure effective regulation pursuant to the State Bingo Laws and to make certain that the proceeds from bingo games appropriately pass into the hands of legitimate charitable organizations.
*668 "The Court finds that the purpose of the Bingo Ordinance is to protect legitimate, charitable organizations from profit seekers who are or may be reaping the benefits from supposedly charitable bingo operations. The testimony taken by the Dade County Commission clearly documents the purpose of the ordinance and the Court finds that there exists a rational relationship between the purpose of the ordinance and the public health, safety, welfare and morals.
"The Florida Supreme Court has ruled that the police power may:
`... be exercised to protect the public against loss from fraudulent or unscrupulous practices in commercial and financial transactions particularly where the thing dealt with, or the method of dealing with it adapts itself to, deception or fraudulent impositions on the public.' Adams v. Miami Beach Hotel Association, 77 So.2d 465, 467 (Fla. 1955).
"Based upon evidence presented the Court concludes that substantial evidence exists that money which is paid by bingo players, in the belief that they are helping legitimate charities, is being skimmed off by persons through such devices as high salaries and high rents for their own purposes. However, irrespective of whether skimming is taking place, this Court is of the opinion that the operation of bingo games vitally involves the public interest and requires close governmental scrutiny and regulation. Historically, the regulation of authorized gambling has been closely and carefully controlled in Florida. The need for protection of the public gives the governmental entity the authority to `exercise greater control and exercise its police power in a more arbitrary manner' in the case of gambling regulations. Rodriguez v. Jones, 64 So.2d 278, 279 (Fla. 1953); Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, 37 So.2d 692, 694 (Fla. 1948). The Court in Hialeah Race Course, Inc., supra, has taken the position that authorized gambling is affected with a public interest and consequently the exercise of the police power in that sector is essential to the public welfare. Based upon the evidence received and the previously cited authorities, this Court finds the Bingo Ordinance to be a reasonable exercise of Dade County's police power.
"The plaintiffs also raised the arguments that the ordinance constitutes an improper delegation of power to police and that the ordinance bestows unfettered discretion on police. Both issues are similar and a discussion of the basic issue raised by these contentions were previously discussed in the Fourth Amendment section. However, to the extent that both argments involve an allegation by the plaintiff that Dade County has arbitrarily exercised its police power, the Court finds these contentions lack merit in the context of this case.
"Next the plaintiffs raise the objection that the ordinance violates the Due Process Clause of the Fourteenth Amendment because it provides for automatic revocation of the permit to operate bingo without notice or administrative hearing.
"The ordinance in question establishes no regulatory structure to make rules, hand down orders or generally administer the ordinance. No existing County department is assigned any administrative duties, except for the Tax Collector who merely receives applications for permits, checks to see if the required documents are filed with the applications and issues the permits upon payment of the required fee.
"The Bingo Ordinance before the Court provides for the revocation of a permit upon one and only one event  a criminal conviction for a violation of the ordinance. Such a procedure provides the best possible due process available in our judicial system, since the person must be proved guilty of violating the ordinance beyond a reasonable doubt instead of by a mere preponderance of the evidence, as is the standard in civil cases. The person charged will also have the right to choose whether he will be *669 tried by a jury of his peers or by a judge. This Court holds the view that the due process provision of the ordinance are fair and constitutionally valid.

"VIII. EQUAL PROTECTION
"The plantiffs' equal protection attack is directed against two alleged discriminatory provisions:
"1. that the ordinance `discriminates against newly organized charities and charitable organization'. Plaintiffs' Complaint, Paragraph 15; and
"2. that the ordinance `discriminates against operators of bingo games operated on premises not owned by a charity or leased from a charity'. Plaintiffs' Complaint, Paragraph 16.
"With regard to the plaintiff's first argument of discrimination, it is clear from the evidence received at trial and the memoranda and arguments of counsel that the plaintiffs have not reasserted this contention after it appeared in the complaint. The Court will therefore regard the point as having been abandoned.
"Next, with regard to plaintiffs' second discrimination contention, Dade County admitted that there were distinctions in the ordinance between the requirements for operators of bingo games on premises owned by charities and operators of games on other premises.
"Equal protection of the laws guaranteed by Federal and State Constitutions, does not forbid reasonable classification for the purpose of local legislation. Brock v. Hardie, 114 Fla. 670, 154 So. 690 (1934). In so classifying, the legislative authority may give groups of persons certain rights or burdens that are not given to others so long as there is a reasonable basis for the dichotomy. See State ex rel. Watson v. Lee, 157 Fla. 62, 24 So.2d 793 [798] (1946).
"The Fourteenth Amendment is violated only if the classification rests on grounds wholly irrelevant to the achievement of the government's objective. McGowan v. Maryland, 366 U.S. 420 [, 81 S.Ct. 1101, 6 L.Ed.2d 393] (1961). Under Florida Law:
`... if a classification made has a reasonable basis in real differences of practical conditions with reference to the subject regulated and is not merely arbitrary, it will not be regarded as unjustly discriminatory and will not of itself be a denial of the equal protection of the laws.' Goldstein v. Maloney [62 Fla. 198,] 57 So. 342 (Fla. 1911).
Therefore, when there is a reasonable and practical basis for classification in establishing legislative regulations, such classifications should be upheld. Davis v. Florida Power and Light Co. [64 Fla. 246,] 60 So. 759 (Fla. 1913).
"In construing legislative classifications pursuant to the police power, the Florida Supreme Court has stated:
`Classifications for police regulation ... should be sustained by the courts for enforcement if there is any conceivable reason and legal basis therefor. .. .' State ex rel Lawson v. Woodruff [134 Fla. 437,] 184 So. 81, 84 (Fla. 1938).
"Based upon the evidence heard at trial the Court finds that the Board of County Commissioners of Dade County has established a reasonable classification which is related to a legitimate government objective, and there is no basis for plaintiffs' contention that the ordinance is discriminatory and violative of the equal protection clause. While many provisions of the ordinance are uniformly applicable,[5] [sic] the distinctions *670 that have been made occur in three areas. Operators of games on premises owned by a charity are not required:
"1. to post at the bingo hall the gross receipts, prizes and net receipts of bingo games, but they must make such information available within 48 hours;
"2. to use bingo cards only once and to use only a certain type of card (however, this exemption is valid only if bingo is played no more than three days per week); and
"3. to sell the bingo cards to players at a fixed price and without a quantity discount, however, they must adhere to a published sale price and use color coded admission tickets so that cards may be easily accounted for. The Court is of the opinion that there is a reasonable basis under the police power for these classifications.
"First, the Court finds that the minutes of the Dade County Commission meeting of March 4, 1975 (concerning an earlier version of what was ultimately enacted as the bingo ordinance) confirm that the Commission specifically intended to exempt inhouse bingo games (games on property owned by a charity) from certain provisions of the ordinance.
"Second, the Court finds that the legislative findings of the Commission clearly establish that the main purpose of the ordinance was to ensure that the proceeds from bingo games passed into the hands of legitimate charitable organizations to be used for legitimate charitable purposes.
"Third, based upon testimony adduced at trial, the Court finds that the danger of removal of bingo money from legitimate charities is not nearly so great in a game played on charity-owned premises as it is on premises owned by some wholly profit-making venture.
"The classification in the Dade County bingo ordinance recognizes that games on charity-owned premises are not as likely to be utilized by outsiders for illegal profit, and that such premises are subject to greater control by the charitable organization than commercial halls. This classification meets the standards set forth in the cases previously cited  it is not arbitrary, and it has a reasonable basis founded on real differences in practical conditions. The Court therefore holds that the ordinance does not violate the Equal Protection Clause of the Fourteenth Amendment.

"IX. OTHER ISSUES
"In their complaint the plaintiffs have raised a plethora of constitutional issues in addition to those already discussed. However, each of the following issues were not argued orally or by memorandum to the Court: that the ordinance is vague, that the ordinance interferes with the right of association under the First Amendment, that the ordinance regulates areas beyond the scope of legitimate licensing authority, that the ordinance contains penal sanctions without the requisite intent requirement, and that the ordinance has no relevancy to the permissible taxing power of the County. The Court finds that the above contentions are without merit.
"In addition, for the first time in a memorandum submitted just prior to final argument, the plaintiffs raised two new issues which were not included in their complaint or the amendment to their complaint: that the ordinance creates an undue burden on interstate commerce and that the ordinance violates the Impairment of Contract Clause in the U.S. Constitution. These issues were not properly or timely raised before the Court, however, had they been properly raised, the Court would have found neither point valid. After receiving testimony in this case the Court is convinced that the ordinance places no unconstitutional burden on interstate commerce and that it does not impair any contract.

"X. CONCLUSION
"This Court holds that Ordinance No. 75-50 represents a constitutional exercise of police *671 power by the Board of County Commissioners of Dade County, Florida. The Court is of the opinion that the area sought to be regulated is one that requires close government scrutiny to protect both the public and legitimate charitable organizations from those who would use them to run profit making businesses in violation of Florida law. The ordinance enacted by Dade County places bingo operations in the sunshine where the public may view its operations.
"The final hearing in this cause having been held and the agreement to withhold enforcement of the ordinance having expired, Dade County may proceed upon entry of this order to enforce the ordinance." [emphases supplied]

* * * * * *
We find the evidence in the record to support the trial judge's findings of fact and no error in his application of the law; therefore, the final judgment confirming same be and it is hereby affirmed.
Affirmed.
NOTES
[1] "The Board of County Commissioners of Dade County, Florida, passed and adopted Dade County Ordinance No. 75-50 on July 2, 1975."
[2] "The quoted `Whereas' clauses contained in Dade County Ordinance No. 75-50, page 2."
[3] "Dade County Ordinance No. 75-50 provides in part that:

`These records (referring to records required to be maintained on bingo operations) shall be made available on demand for immediate inspection by any law enforcement officer at reasonable times during normal business hours and whenever bingo games are in progress, but all law enforcement officers shall not interrupt an actual bingo game in progress or interfere with the operation of the premises where bingo is played unless necessary in order to make an inspection.'
[5] "For example, the following provisions are applicable to all operators:

1. All types of `operators', as defined in the ordinance, must obtain a permit.
2. All types of `owners', as defined, must obtain a permit.
3. All operators must maintain certain records and those records are subject to being inspected by law enforcement officers under the law.
4. All persons operating games must wear identification tags.