Ms. Lucia A. Dougherty City Attorney City of Miami 169 E. Flagler Street Miami, Florida 33131
Dear Ms. Dougherty:
This is in response to your request for an opinion on substantially the following question:
 DOES A MUNICIPAL ORDINANCE WHICH SETS A GOAL FOR PROCUREMENT OF 51% OF PROFESSIONAL SERVICES, INCLUDING ARCHITECTURAL AND ENGINEERING SERVICES, FROM QUALIFIED MINORITY PROFESSIONALS CONFLICT WITH THE CONSULTANTS' COMPETITIVE NEGOTIATION ACT?
The Consultants' Competitive Negotiation Act, s. 287.055, F.S., sets forth requirements for procuring and contracting for certain professional services. Section 287.055(3), F.S., operates to require an agency to follow certain procedures for announcing occasions when professional services are required to be purchased and for certifying firms or individuals desiring to provide such services as qualified and further directs agencies to adopt administrative procedures for the evaluation of professional services. See also, s. 287.055(2)(a) and (b), F.S., respectively defining "professional services" as including architectural and engineering services, and defining "agency" to include municipalities for purposes of s. 287.055. Section 287.055(4), F.S., operates to require agency evaluation of firms offering to provide professional services for a proposed project and agency selection of no fewer than three firms deemed to be the most highly qualified to perform the required services, except that such subsection does not apply to specified contracts or projects. Section 287.055(5), F.S., sets forth the procedure for competitive negotiation of a contract for the required services, and the remainder of s. 287.055 provides prohibitions against certain acts, statements of applicability with respect to certain projects or contracts, and a rule of construction with respect to certain other statutory provisions.
Your inquiry states that the mayor and city commissioners are particularly concerned about a potential conflict between a proposed ordinance which sets a goal of 51% minority professional services procurement and s. 287.055(3)(d), F.S., providing in pertinent part that "an agency shall endeavor to meet the minority business enterprise procurement goal set forth in s. 287.042" when securing professional services. This opinion is expressly limited to the issue of conflict as thus presented in your inquiry. Moreover, no opinion is expressed as to any constitutional issues implicit in any such proposed ordinance. Cf., Wygant v. Jackson Board of Education, 54 USLW 4479 (U.S., filed May 19, 1986); South Florida Chapter of Associated General Contractors of America, Inc. v. Metropolitan Dade County, Florida, 723 F.2d 846 (11th Cir. 1984).
Section 287.042(4)(f), F.S., states in pertinent part that "[e]ach agency is encouraged to spend 15 percent of the moneys actually expended for . . . contractual services . . . for the purpose of entering into contracts with certified minority business enterprises as defined in this act." (e.s.) The emphasized language, inter alia, was added by s. 21 of Ch. 85-104, Laws of Florida, the Florida Small and Minority Business Assistance Act of 1985. Compare, s. 287.042(4)(f), F.S. (1984 Supp.), which provided in pertinent part that "[e]ach agency is encouraged to annually set aside a sum of money not to exceed 5 percent of the moneys actually expended for contractual services . . . for the purpose of entering into contracts with qualified, responsive, minority-owned firms or companies or minority persons." (e.s.) The act's definition of "minority business enterprise," s. 2, Ch. 85-104, Laws of Florida, is codified at s. 288.703(2), F.S., and provides that a minority business enterprise means a small business concern as defined by s. 288.703(1), F.S., which is organized to engage in commercial transactions, domiciled in Florida, and at least 51% of which is owned by "minority persons" and whose management and daily operations are controlled by such persons, and further expressly providing that "[a] minority business enterprise may primarily involve the practice of a profession." Cf., s.288.703(3), F.S., defining "minority person" (compare, s.287.012[8], F.S., defining "minority-owned firm or company"), and s. 288.703(4), F.S., defining "certified minority business enterprise" as a business certified by the Department of General Services to be a minority business enterprise. For the reasons developed herein, I fail to perceive any such conflict between the proposed ordinance and s. 287.055(3)(d) as to prevent the adoption and enforcement of the ordinance.
Section 287.055(3)(d), F.S., authorizes an agency to adopt administrative procedures for the evaluation of professional services and lists factors to be considered in such evaluation. These factors include, but are not limited to, "capabilities, adequacy of personnel, past record, experience, whether the firm is a certified minority business enterprise as defined by the Florida Small and Minority Business Assistance Act of 1985" and other factors applicable to particular requirements. See also, s.287.055(4)(b), F.S., as amended by Ch. 85-104, Laws of Florida (enumerating factors for consideration with respect to selection of three firms deemed most highly qualified and also expressly including "whether a firm is a certified minority business enterprise"). As further amended by Ch. 85-104, supra, s.287.055(3)(d) expressly directs an agency to "endeavor to meet the minority business enterprise procurement goal set forth in s.287.042" (e.s.), i.e., 15 percent. Neither s. 287.055, F.S., nor Ch. 85-104, supra, defines the word "goal." Generally, a "goal" is a result or achievement toward which effort is directed; a condition or state to be brought through a course of action. See, Random House Dictionary of the English Language 605 (Unabridged ed. 1967); Webster's Third New International Dictionary 972 (Unabridged ed. 1966). Cf., 41 C.F.R. s. 60-2.12 (for purposes of certain federal minority set-aside provisions, "[g]oals may not be rigid and inflexible quotas").
It would not appear that the reference to a 15 percent "goal" in s. 287.055(3)(d), F.S. (incorporating by reference the percentage specified in s. 287.042[4][f], F.S.), establishes a maximum percentage which may not be exceeded, in direct contrast to s.287.042(4)(f), F.S., (1984 Supp.), or otherwise operates to prohibit an agency from contracting for professional services with minority business enterprises because the 15 percent "goal" has been achieved. Moreover, it is well established that the state and a political subdivision or municipality therein may enact concurrent legislation in the absence of express preemption and as long as such legislation does not conflict. City of Miami Beach v. Rocio Corp., 404 So.2d 1066 (3 D.C.A. Fla., 1981), pet for rev. denied, 408 So.2d 1092 (Fla. 1981). Cf., Rinzler v. Carson,262 So.2d 661 (Fla. 1972). Unless preempted, an ordinance which supplements a statute may coexist with that statute and, in the absence of prohibition of such in the statute, may impose stricter or more stringent requirements than the statute, so long as the ordinance does not prohibit that which a statute authorizes or permit that which a statute prohibits. See, City of Miami Beach v. Rocio Corp., supra; Jordan Chapel Freewill Baptist Church v. Dade County, 334 So.2d 661 (3 D.C.A. Fla., 1976); E.B. Elliott Advertising Co. v. Metropolitan Dade County, 425 F.2d 1141 (5th Cir. 1970). Cf., City of Lake Wales v. Lamar Advertising Association of Lakeland, Florida, 414 So.2d 1030 (Fla. 1982); Florida Department of Transportation v. E.T. Legg Co.,472 So.2d 1336 (4 D.C.A. Fla., 1985) (state highway beautification laws did not restrict adoption of more stringent local requirements). Thus, it appears that a municipal ordinance may set a stricter or more stringent goal for procurement of professional services than the goal for such procurement which the municipality is directed by s.287.055(3)(d) to "endeavor to meet" without conflicting with that statute.
Therefore, unless and until legislatively or judicially determined otherwise, I am of the view that a municipal ordinance which sets a goal for procurement of 51% of professional services, including architectural and engineering services, from qualified minority professionals does not conflict with the Consultants' Competitive Negotiation Act.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General