Dear Mr. Ottinot:
You have asked substantially the following question:
May the city's charter be amended pursuant to a petition initiative requiring voter approval for any capital improvement project exceeding $500,000 without conflicting with the city's constitutional home rule power?
In sum:
 A municipal charter may be amended pursuant to a petition initiative to require voter approval of any capital improvement project exceeding $500,000 without conflicting with the city's constitutional home rule powers.
Initially, I would note that the City of Sunny Isles Beach is located in Dade County, a county which constitutionally has been granted the authority to provide both county-wide and municipal functions and services as provided for in its charter and in accord with general law.[1] No provisions of the Dade County Charter affecting the ability of the City of Sunny Isles Beach to amend its charter to place a requirement of referendum approval for capital improvement expenditures in excess of $500,000 have been brought to the attention of this office. The following discussion, therefore, offers no comment on the provisions of the Dade County Charter and presumes that it presents no impediment to such action.
Section 166.021, Florida Statutes, implements the broad home rule powers granted by Article VIII, section 2(b) of the Florida Constitution, by providing that "municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law." As stated in subsection (4) of that statute, "[i]t is the further intent of the Legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the constitution, general or special law, or county charter[.]"
Thus, it is clear that municipalities may legislate concurrently in areas that are not expressly preempted by the state provided that such legislation does not conflict with state law. As the Florida Supreme Court in Rinzler v. Carson, [2] stated: "[a] municipality cannot forbid what the legislature has expressly licensed, authorized or required, nor may it authorize what the legislature has expressly forbidden." Conflict, however, does not exist merely because a local regulation is more stringent than the statute or regulates an area not covered by the statute.[3] Rather, legislative provisions are inconsistent if, in order to comply with one provision, a violation of the other is required.[4] There is no question that conflict may exist regardless of whether a charter or ordinance was passed by the governing body or initiated by a citizen's initiative.
Section 2(a), Article VIII, Florida Constitution, provides that "[m]unicipalities may be established or abolished and their chartersamended pursuant to general or special law." (e.s.)
Section 166.031(1), Florida Statutes, in pertinent part, provides:
 "The governing body of a municipality may, by ordinance, or the electors of a municipality may, by petition signed by 10 percent of the registered electors as of the last preceding municipal general election, submit to the electors of said municipality a proposed amendment to its charter, which amendment may be to any part or to all of said charter except that part describing the boundaries of such municipality. The governing body of the municipality shall place the proposed amendment contained in the ordinance or petition to a vote of the electors at the next general election held within the municipality or at a special election called for such purpose." (e.s.)
Furthermore, section 166.031(3), Florida Statutes, allows a municipality to amend its charter notwithstanding contrary charter provisions. Thus, the only limitation in section 166.031, Florida Statutes, is placed upon amending that part of the charter describing the boundaries of the municipality.[5] It should be noted, however, that a municipality's charter may not prohibit the levy of ad valorem taxes without referendum approval.[6]
On several occasions, this office has addressed the limitations on the amendment of a municipal charter. In Attorney General Opinion 82-101, this office was asked to determine whether a municipal charter could be amended pursuant to section 166.031, Florida Statutes, to limit or restrict the exercise of specific corporate, legislative, and governmental powers. In that opinion, citizens opposed the city's practice of transferring revenues from water and sewer operations to the city's general fund to be used for general municipal operating purposes. Based upon the authority in section 2(a), Article VIII, Florida Constitution, and section 166.031, Florida Statutes, this office concluded that the charter could be amended to prohibit the transfer of any utility revenues to the general fund, thereby limiting the city's power.[7]
While this office in Attorney General Opinion 90-38 found that a city's charter could be amended to require referendum approval for the issuance of all municipal bonds, it was concluded in Attorney General Opinion 86-89 that a municipality may not amend its charter to provide that no ad valorem tax on real property or tangible personal property may be levied without referendum approval. Such a charter amendment would have limited the authority of the municipality's governing body to levy ad valorem taxes in direct contravention of section 195.207, Florida Statutes, prohibiting a municipal charter from limiting the governing body's authority to levy ad valorem taxes.[8]
More recently, in Attorney General Opinion 02-04, this office concluded that a county charter could not be amended to place a cap on the annual increase in the county's operating budget, even if the cap could be waived by an affirmative vote of at least six of the seven members of the board of county commissioners. In reaching such a conclusion, this office recognized that Florida courts consistently have stricken local provisions that seek to limit a county commission's discretion in setting an annual budget and millage rate. Such a limitation would be in conflict with Chapters 129 and 200, Florida Statutes, which set forth the statutory framework by which counties are to establish budgets and millage rates.[9]
The statutes governing the adoption of a budget for a municipality, however, are not as extensive as those provided in Chapter 129, Florida Statutes. Section 166.241, Florida Statutes, merely provides that the governing body of each municipality shall adopt a budget each fiscal year.[10] The statute further addresses when amendments to
the budget may be made.[11] Moreover, the provisions of section200.065, Florida Statutes, require the governing body of a taxing authority to provide notice of its intent to adopt a millage rate and provide an opportunity for its citizenry to be heard.[12] There appears to be nothing that speaks to the manner in which capital improvements are to be funded.
This office has commented informally on the propriety of a charter amendment requiring referendum approval of capital projects, appropriations, taxes, and salaries of municipal officers and employees.[13] The opinion acknowledged that there are no general prohibitions against a charter provision requiring citizens' initiatives for municipal salaries. However, it was noted that the propriety of referendum approval for capital projects may depend upon the particular project in question and the existence of any general laws providing for such projects. No such general laws have been brought to the attention of this office.
Absent a general law relating to the expenditure of municipal funds for a specific capital project, I cannot conclude that the authority of the electorate to amend its city charter to restrict the expenditure of such capital outlays pursuant to section 166.031, Florida Statutes, through an initiative petition to restrict the expenditure of such capital outlays would be affected.
I have found several city codes containing provisions addressing referendum approval for capital expenditures.[14] Thus, it would appear that requiring referendum approval for capital expenditures exceeding a specific amount is an accepted restriction upon the exercise of a municipality's home rule power.
Accordingly, it is my opinion that a city's charter may be amended by a petition initiative pursuant to section 166.031, Florida Statutes, to require voter approval of any capital improvement project exceeding $500,000.
Sincerely,
 Bill McCollum Attorney General
BM/tals
[1] See Art. VIII, s. 6(e) and (f), Fla. Const.
[2] 262 So. 2d 661, 668 (Fla. 1972).
[3] See City of Kissimmee v. Florida Retail Federation, Inc., 915 So. 2d 205 (Fla. 5th DCA 2005) (generally the fact that local legislation imposes additional requirements on a person or business is not evidence of conflict).
[4] See Jordan Chapel Freewill Baptist Church v. Dade County, 334 So. 2d 661, 664 (Fla. 3d DCA 1976); F.Y.I. Adventures v. City of Ocala,698 So. 2d 583 (Fla. 5th DCA 1997) (absent preemption, conflict with state statute is given a very strict and limited meaning; they must contradict each other in the sense that both legislative provisions cannot co-exist, i.e., in order to comply with one, a violation of the other is required).
[5] But see s. 2(c), Art. VIII, Fla. Const. (municipal annexation of unincorporated territory, merger of municipalities, and exercise of extra-territorial powers by municipalities is governed by general or special law), and s. 166.021(3)(a), Fla. Stat. (municipality may not enact legislation concerning annexation, merger, and the exercise of extra-territorial power, which requires general or special law pursuant to s. 2[c], Art. VIII, Fla. Const.).
[6] See Op. Att'y Gen. Fla. 86-89 (1986) citing to s. 195.207, Fla. Stat., which expressly prohibits any charter limitations upon a municipality's authority to levy ad valorem taxes or utility service taxes.
[7] Cf. Op. Att'y Gen. Fla. 75-223 (1975), stating that although the "Municipal Home Rule Powers Act" repealed or turned into municipal ordinances provisions in a city's charter as they existed on the effective date of the act, the charter was restored to its original status by referendum subsequent to the passage of the act and may now only be amended as provided in s. 166.031, Fla. Stat.
[8] Section 195.207, Fla. Stat., states:
 "No municipal charter may prohibit or limit the authority of the governing body to levy ad valorem taxes. . . . Any word, sentence, phrase, or provision, of any special act, municipal charter, or other law, that prohibits or limits a municipality from levying ad valorem taxes within the millage limits fixed by s. 9, Art. VII of the State Constitution, . . . is hereby nullified and repealed."
[9] See also Op. Att'y Gen. Fla. 02-12 (2002), in which this office concluded that capital outlay surtaxes contingent upon there being a cap on the board's discretionary capital millage would be contrary to the scheme established by the Legislature in Chapters 236, 237, and 200, Florida Statutes, which place the discretion and decision-making authority in the district school board to annually adopt a budget and set millage rates to fund such a budget.
[10] Section 166.241(2), Fla. Stat., provides:
 "The governing body of each municipality shall adopt a budget each fiscal year. The budget must be adopted by ordinance or resolution unless otherwise specified in the respective municipality's charter. The amount available from taxation and other sources, including amounts carried over from prior fiscal years, must equal the total appropriations for expenditures and reserves. The budget must regulate expenditures of the municipality, and it is unlawful for any officer of a municipal government to expend or contract for expenditures in any fiscal year except in pursuance of budgeted appropriations."
[11] Section 166.241(3), Fla. Stat., states:
 "(3) The governing body of each municipality at any time within a fiscal year or within up to 60 days following the end of the fiscal year may amend a budget for that year as follows:
 (a) Appropriations for expenditures within a fund may be decreased or increased by motion recorded in the minutes, provided that the total of the appropriations of the fund is not changed.
 (b) The governing body may establish procedures by which the designated budget officer may authorize certain budget amendments within a department, provided that the total of the appropriations of the department is not changed.
 (c) If a budget amendment is required for a purpose not specifically authorized in paragraph (a) or paragraph (b), the budget amendment must be adopted in the same manner as the original budget unless otherwise specified in the charter of the respective municipality."
[12] Section 200.065(2)(d), Fla. Stat., provides in part:
 "Within 15 days after the meeting adopting the tentative budget, the taxing authority shall advertise in a newspaper of general circulation in the county as provided in subsection (3), its intent to finally adopt a millage rate and budget. A public hearing to finalize the budget and adopt a millage rate shall be held not less than 2 days nor more than 5 days after the day that the advertisement is first published. During the hearing, the governing body of the taxing authority shall amend the adopted tentative budget as it sees fit, adopt a final budget, and adopt a resolution or ordinance stating the millage rate to be levied."
[13] Inf. Op. to Mr. Kirk S. Warren, October 16, 2007.
[14] See City of Gulfport Code of Ordinances, Art. X, GENERAL PROVISIONS, s. 1005, Improvements, Financial Limitation (city council shall not commit the city to any improvement requiring the expenditure of general fund revenue, other than insurance proceeds, in excess of five hundred thousand dollars [$500,000.00] for any separate improvement or project, unless approved by a vote of a majority of the qualified electors); Village of Key Biscayne Code of Ordinances, Art. V, ELECTIONS, s. 5.02(a), Initiative and referendum (electors have power to propose ordinances to the council and, if the council fails to adopt an ordinance so proposed without any change in substance, to adopt or reject it at an election, provided that such power does not extend to the annual budget or any ordinance appropriating money, levying taxes or setting salaries of officers or employees; however, "[t]he referendum power described in paragraph [ii][A] of this subsection [a] shall not be available to require reconsideration of an ordinance authorizing the issuance of debt or a Capital Project in excess of $500,000.00 unless proceedings with respect to the referendum are commenced within thirty [30] days after the date of adoption of the ordinance."). Cf. City of Hialeah Code of Ordinances, Art. VI, INITIATIVE AND REFERENDUM, s. 6.02, Power of referendum (electors are not empowered to reconsider ordinances that extend to providing an annual budget or capital program, appropriating money, levying taxes or setting salaries of city officers or employees); City of Homestead Code of Ordinances, Art. VI. ELECTIONS, INITIATIVE, AND REFERENDUM, s. 6.02(a)(ii) (referendum power of electorate does not extend to annual budget or capital program or to any ordinance appropriating or authorizing the borrowing of money, levying taxes or setting salaries of city officers or employees).