948 So.2d 988 (2007)
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellant,
v.
Marvin LEONS, et al., Appellees.
Nos. 4D06-4773 to 4D06-4775, 4D06-4990, 4D06-4991, 4D06-5079 to 4D06-5082.
District Court of Appeal of Florida, Fourth District.
February 21, 2007.
*989 Jacob C. Jackson, Chief Legal Counsel, District 10, Fort Lauderdale and Leslie Hinds St-Surin, Assistant District Legal Counsel, Miami, for appellant.
Howard Finkelstein, Public Defender and Diane M. Cuddihy, Chief Assistant Public Defender, Fort Lauderdale, for appellees.
MAY, J.
Crisis driven, the Department of Children and Families (DCF) petitions this court for an emergency writ of prohibition or certiorari to vacate a trial court order that requires the DCF to provide mental health treatment to persons found to be incompetent while in jail awaiting placement in a forensic facility.[1] The DCF argues that the trial court's order departed from the essential requirements of law and violated the separation of powers doctrine. We previously denied the consolidated petitions. This opinion follows the issuance of our order.
All respondents are criminal defendants who have been declared incompetent, have been committed to the DCF, and are incarcerated in county jail awaiting placement in a forensic facility.[2] The Public Defender's Office filed motions or ore tenus moved for immediate placement, immediate release, and for the DCF to provide mental health treatment pending the defendant's placement in a forensic facility.[3] *990 The trial court consistently ordered the DCF to immediately place the defendant in a forensic facility and provide treatment in the jail pending that placement. This is the section of the order that serves as the focus of these proceedings.
The DCF argues that part of the trial court's order effectively amends section 916.107(1)(a), Florida Statutes (2006), by directing the DCF to provide mental health services to forensic clients while in county jail. It suggests that the order requires the DCF to enter into contractual obligations for these services thereby encroaching on the executive branch's discretion on how to spend funds and on the legislature's power of appropriation. We disagree.
For decades the criminal justice system has been substituted for the lack of sufficient mental health treatment services. "The so-called de-institutionalization of the mentally ill has resulted in massive homelessness and the re-institutionalization of the mentally ill" in county jails and state correctional institutions "poorly equipped to handle this population." See Substance Abuse and Mental Health Corporation, 2006 Annual Report 2 (2007) [hereinafter Annual Report]. Indeed, the Department of Corrections reports that up to 17% or 14,345 of Florida's state prison inmates have a serious mental illness. Id. at 15.
Despite a call to action by advocates and consumers over the years, Florida continues to rank forty-eighth in the nation in per capita mental health funding. Id. As early as 1981, the courts were called upon to address the issue of inadequate mental health services whenever mental health treatment needs reached crisis levels. See Miller v. Carson, 524 F.Supp. 1174 (M.D.Fla.1981). More recently, the First, Third, Fourth, and Fifth District Courts of Appeal have been called upon to address a myriad of issues arising out of the lack of funding to support the legislative mandate of placement of these individuals within fifteen days of their commitment. See, e.g., Dep't of Children & Families v. Soliman, 947 So.2d 568 (Fla. 1st DCA 2006) (court did not have authority to order release of defendant to personal custody of the Secretary of DCF); Hadi v. L.B., 946 So.2d 1132 (Fla. 1st DCA 2006) (trial court departed from essential requirements of law by directing DCF to subpoena Secretary of agency); Hadi v. Cordero, 31 Fla. L. Weekly D3051, ___ So.2d ___, 2006 WL 3499149 (Fla. 3d DCA Dec. 6, 2006) (order requiring DCF to comply with statutory duty to place committed incompetent offenders in forensic facility did not depart from essential requirements of law); Dep't of Children & Families v. Davis, 923 So.2d 1290 (Fla. 3d DCA 2006) (court cannot designate placement of defendant in specific facility); Dep't of Children & Families v. Harter, 861 So.2d 1274 (Fla. 5th DCA 2003) (trial court cannot direct DCF to provide sexual offender treatment as part of defendant's commitment due to insanity); Facyson v. Jenne, 821 So.2d 1169 (Fla. 4th DCA 2002) (DCF should make arrangements for temporary care and treatment while defendant is in jail awaiting placement in forensic facility). Yet, the crisis lingers.
This year, the DCF has requested "funding to expand secure forensic treatment bed capacity, forensic step-down bed capacity at state treatment facilities, funding *991 for community residential treatment, and community outpatient mental health and substance abuse treatment for people living independently in the community while under conditional release." See Annual Report at 12. It has also requested funding for "comprehensive community service teams to provide outpatient mental health and substance abuse services, including mediation, housing support, and employment services, for county jail inmates and persons with serious mental illnesses and co-occurring disorders who are at risk of incarceration." Id. Hopefully, this request will be heeded, but it does not resolve the present controversy.[4]
To obtain relief from the non-final orders through these petitions for writ of certiorari, the DCF must establish that the trial court departed from the essential requirements of law and caused irreparable injury that cannot be remedied on appeal. Belair v. Drew, 770 So.2d 1164, 1166 (Fla. 2000). The DCF's argument is two-fold. First, it argues the trial court's order departed from the essential requirements of the law by effectively and impermissibly amending section 916.107. Second, the DCF argues that the order violates the separation of powers doctrine. We are unpersuaded by either argument.
In each of these cases, the trial court granted the defense motion for mental health treatment and ordered:
The Florida Department of Children and Family Services is hereby DIRECTED to arrange for the provision of mental health treatment to the defendant in the Broward County Jail pending his[/her] transport to a forensic hospital facility forthwith.
We find this order in complete compliance with existing law.
In 2006, the legislature amended section 916.106(7) of the Florida Statutes. That section now provides:
"Department" means the Department of Children and Family Services. The department is responsible for the treatment of forensic clients who have been determined incompetent to proceed due to mental illness or who have been acquitted of a felony by reason of insanity.
§ 916.106(7), Fla. Stat. (2006) (emphasis added). It is this section upon which the trial court relied in rendering its decision. We concur in the trial court's analysis. This section clearly states that the DCF "is responsible for the treatment of forensic clients who have been determined incompetent." Each of these defendants has been determined incompetent; therefore, the Department of Children and Family Services is responsible for their treatment.
Nevertheless, the DCF argues that section 916.107(1)(a) eliminated any mandate to provide treatment to these clients by employing the word "may." That section now provides:
Clients with mental illness, retardation, or autism and who are charged with committing felonies shall receive appropriate treatment or training. In a criminal case involving a client who has been adjudicated incompetent to proceed or not guilty by reason of insanity, a jail may be used as an emergency facility for up to 15 days following the date the department or agency receives a completed copy of the court commitment order. . . . For a forensic client who is held in a jail awaiting admission to a facility of the department or agency, evaluation and treatment or training may be provided in the jail by the local community mental health provider for *992 mental health services, by the developmental program for persons with retardation or autism, the client's physician or psychologist, or any other appropriate program until the client is transferred to a civil or forensic facility.
§ 916.107(1)(a), Fla. Stat. (2006) (emphasis added). Prior to 2006, this section did not include the permissive word "may" at the end of the paragraph, it employed the mandatory word "shall". The DCF thus argues it is not "required" to provide treatment to forensic inmates committed to its care. As did the trial court, we reject this explanation of statutory change.
Once these defendants are declared incompetent and are committed to the DCF, they are wards of the State. The stark reality that the State through the DCF does not take physical possession of them does not relieve the DCF of its statutorily-imposed duty to provide treatment. See § 916.106(7), Fla. Stat. (2006).
The DCF argues that the court's order imposes on the DCF the duty to provide treatment "comparable to that received at the Florida State Hospital." Those words cannot be found in the trial court's order, which merely reiterates DCF's statutory obligation to provide treatment. It does not direct the DCF as to what treatment shall be delivered or how it is to be delivered. Neither does the order constitute a demand for the DCF to enter into contractual obligations for these services. The order therefore avoids any violation of the separation of powers doctrine. See Dep't of Children & Families v. Morrison, 727 So.2d 404, 405-06 (Fla. 3d DCA 1999).
The DCF next suggests that section 916.107(1)(a) should supercede the responsibility imposed by section 916.106(7). We are required to read statutes in pari materia to give meaning to all provisions. Young v. Progressive Se. Ins. Co., 753 So.2d 80, 84 (Fla.2000) ("Where possible, courts must give effect to all statutory provisions and construe related statutory provisions in harmony with one another."). We agree with the trial court's finding that the amendment to section 916.107(1)(a) merely provided options as to who can provide treatment; it did not eliminate the DCF's responsibility for providing it.[5]
We are well aware that courts cannot interfere with legislative and executive branch discretion in the appropriation and expenditure of funds. The justice system is however tasked with upholding the rule of law. That rule imposes a statutory obligation on the DCF to provide treatment for the defendants in these cases.
The DCF further argues that the trial court erred in failing to conduct an evidentiary hearing to determine whether it can afford to provide the statutorily-mandated treatment. We disagree. If the DCF cannot comply with the trial court's orders due to fiscal shortfalls, then it can provide that proof, as it has so many times before, if called upon to show cause why it has failed to comply with a court order. See, e.g., Facyson v. Jenne, 821 So.2d 1169 (Fla. 4th DCA 2002). We further agree with the trial court that Facyson suggested the very relief that the legislature has now authorized by its amendment of section 916.106(7).
As noted by the third district, we are not unsympathetic to the dilemma faced by the DCF. See Cordero, 31 Fla. L. Weekly at D3052, ___ So.2d at ___. It is truly *993 between the rock and the hard spot. It is required to do that which it is under-funded to do. That dilemma however does not excuse the DCF from its statutory obligation;[6] only the legislature can do that.
For the reasons expressed above, we deny the petitions for writ of certiorari.
Petitions Denied.
TAYLOR, J., concurs.
FARMER, J., concurs specially with opinion.
FARMER, J., concurring specially.
I agree with the majority that the trial court's order is in harmony with the applicable statutory text and for that reason concur in the denial.
NOTES
[1] The DCF filed ten identical petitions. This court has previously consolidated all but one of the cases and ordered that they be treated as petitions for certiorari. On February 16, 2007, the DCF filed a notice of voluntary dismissal, updating this court on the current status of the petitioners and funding that has been secured to address the problem. We nevertheless publish this opinion due to the importance of the issue.
[2] Respondent Leon was transported to a forensic hospital on November 20, 2006, but his claim is capable of repetition, yet evading review. See Dep't of Children & Families v. Mitchell, 844 So.2d 694 (Fla. 5th DCA 2003).
[3] Some motions requested immediate release, placement, and mental health treatment while others sought only one or more forms of relief. In case nos. 4D06-5079, 4D06-5080, 4D06-5081, and 4D06-5082, the court deferred ruling on the motion for immediate placement, but granted the motion for treatment in jail pending transportation to a forensic facility. In case no. 4D06-4991, the court reserved ruling on the motion for immediate placement, denied the motion for immediate release, and granted the motion for mental health treatment in jail. In case no. 4D06-4990, the court granted the motion for mental health treatment. In case nos. 4D06-4773, 4D06-4774, and 4D06-4775, the court denied the motion for immediate release, granted the motion for immediate placement, and ordered the DCF to treat the defendant in jail pending transportation to a forensic facility.
[4] On January 11, 2007, the Palm Beach Post reported the Legislative Budget Commission voted unanimously to spend $19 million to provide 373 more forensic beds.
[5] Our holding does not eliminate the prospect of a trial court relying on The Baker Act, chapter 394, Florida Statutes, to provide needed services when the court determines the defendant satisfies the criteria of that statute. See Jerkins v. Jenne, Case Nos. 4D06-3204 and 4D06-3284 (unpublished order Sept. 1, 2006).
[6] We do not comment on the trial court's finding that the DCF failed to request sufficient funds as it is unnecessary to our holding.