ROSENBERG, ROBIN L., Associate Judge.
 

 Brian Hoesch and South Florida Siberian Husky Rescue, Inc., appeal a final summary judgment denying relief in their declaratory judgment suit filed against Broward County, Florida. That suit challenged two Broward County ordinances regulating dangerous dogs on the grounds that they are in conflict with state law. We find that the ordinances conflict with state law, and reverse.
 

 The relevant facts are undisputed. Hoesch’s dog, Mercedes, escaped from Hoesch’s back yard and attacked and killed a neighbor’s cat. Prior to this incident, Mercedes had never been declared dangerous by any governmental authority. Broward’s animal control division took Mercedes into custody, where she remains. Broward served Hoesch a “Dangerous Dog Disposition” notifying Hoesch of its intent to destroy Mercedes. Per the ordinance, Hoesch requested a hearing. The hearing officer sustained the disposition. Hoesch then sought declaratory relief in the circuit court, arguing that the ordinance conflicted with Florida’s animal control statutes such that Broward could not rely upon the ordinance to destroy his dog. Hoesch and Broward filed cross-motions for partial summary judgment on the claim that the ordinance and state law conflicted. The trial court entered final summary judgment in favor of Broward and this appeal followed.
 

 The “Dangerous Dog Disposition” was made pursuant to the Broward County
 
 *1179
 
 ordinances regulating dangerous dogs. Broward defines a dangerous dog as, among other things, “any dog that according to the records of the Division or other animal control or law enforcement authority ... [h]as killed or caused the death of a domestic animal in
 
 one incident,
 
 while off the owner’s or keeper’s property and while unprovoked.” Broward County, Fla., Code of Ordinances ch. 4, 4-2(k)(2) (emphasis added). Broward prescribes the disposition of dogs that have not been previously designated dangerous:
 

 If any dog not previously classified as dangerous ... causes the death of a domestic animal, while unprovoked and while off the owner’s or keeper’s property, an officer shall immediately confiscate and impound the dog and, after written notice to the owner and expiration of ten (10) business days from the date the owner receives the notice, dispose of such dangerous dog in a humane manner.
 

 4 — 12(j)(2) (emphasis added).
 

 Florida has specifically defined a “dangerous dog” as any dog that according to the records of the appropriate authority “[h]as
 
 more than once
 
 severely injured or killed a domestic animal while off the owner’s property.” 767.11(l)(b), Fla. Stat. (2010) (emphasis added). Florida requires the destruction of dogs that have previously been declared dangerous if they attack a domestic animal without provocation. 767.13(1). Thus, chapter 767 does not require the destruction of dogs, such as Mercedes, that have killed a single domestic animal. In fact, reading these two statutes together, a dog would have to kill at least three domestic animals before section 767.13(1) would require its destruction.
 

 The parties stipulate that the issue presented in this case is not one of preemption. If there is no issue of preemption, then the question is whether the county ordinance conflicts with the state statute.
 
 See F.Y.I. Adventures, Inc. v. City of Ocala,
 
 698 So.2d 583, 584 (Fla. 5th DCA 1997); Art. VIII, § 1(g), Fla. Const. (“The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law.”). Hoesch contends that Broward’s ordinances directly conflict with state law. We agree.
 

 “Conflict” has been construed to mean “contradictory in the sense of legislative provisions which cannot co-exist.”
 
 Jordan Chapel Freewill Baptist Church v. Dade Cnty.,
 
 334 So.2d 661, 664 (Fla. 3d DCA 1976) (quotation omitted). Thus, an ordinance and statute are in conflict when compliance with the ordinance violates the state law, or makes compliance with state law impossible.
 
 Id.
 
 It is not a conflict if the ordinance is more stringent than the statute.
 
 See id.
 
 In such cases, the more stringent ordinance supplements the statute.
 
 See id.
 
 at 664-65.
 

 When an area of law is not preempted by state law, a county can pass ordinances concurrently on subjects regulated by state statute.
 
 Thomas v. State,
 
 614 So.2d 468, 470 (Fla.1993). The Florida Supreme Court has further explained:
 

 Certainly, municipal ordinances are inferior to laws of the state and must not conflict with any controlling provision of a statute. In other words, a municipality cannot forbid what the legislature has expressly licensed, authorized or required, nor may it authorize what the legislature has expressly forbidden. An ordinance penalty may not exceed the penalty imposed by the state; however, a municipality may provide a penalty less severe than that imposed by a state statute.
 

 City of Hollywood v. Mulligan,
 
 934 So.2d 1238, 1246-47 (Fla.2006) (alterations re
 
 *1180
 
 moved) (citations omitted) (internal quotation marks omitted).
 

 A duly enacted ordinance of a local government is presumed valid, and the party challenging it carries the burden of establishing its invalidity.
 
 Lowe v. Broward Cnty.,
 
 766 So.2d 1199, 1203 (Fla. 4th DCA 2000). A corollary of this presumption is that an appellate court will indulge every reasonable presumption in favor of an ordinance’s constitutionality.
 
 Id.
 
 at 1203-04.
 

 It is undisputed that Mercedes is a “dangerous dog” pursuant to Broward ordinance 4-2(k)(2) but not Florida statute section 767.11(l)(b). Likewise, Broward ordinance 4-12(j)(2) requires the dog’s destruction, but section 767.13 does not.
 

 Broward attempts to avoid this suggestion of conflict by pointing to section 767.14, Florida Statutes (2010). Bro-ward argues that no conflict exists because, in that statute, the Legislature has authorized local governments to heighten the regulation of dangerous dogs:
 

 Nothing in this act shall limit any local government from placing further restrictions or additional requirements on owners of
 
 dangerous dogs
 
 or developing procedures and criteria for the implementation of this act, provided that no such regulation is specific to breed and that the provisions of this act are not lessened by such additional regulations or requirements.
 

 Id.
 
 (emphasis added). To wit, if a dog is designated as a “dangerous dog” as defined in section 767.11(l)(b), then the local government may enact additional restrictions or requirements on the owners of such dogs. Mercedes, however, is not a dangerous dog as defined by section 767.11(l)(b). Thus, Broward’s argument that section 767.14 authorizes additional restrictions on owners of dogs such as Mercedes is misplaced. Section 767.14 narrowly applies to owners of statutorily defined “dangerous dogs,” and neither authorizes nor prohibits additional restrictions or requirements for dogs that are not included within the state’s definition of “dangerous dog.”
 
 See Nicholson v. State,
 
 600 So.2d 1101, 1103 (Fla.1992) (“When a definition of a word or phrase is provided in a statute, that meaning must be ascribed to the word or phrase whenever it is repeated in the statute unless contrary intent clearly appears.”). Accordingly, section 767.14 is not directly applicable to our conflict analysis.
 

 The parties also dispute the effect of section 828.27(7), Florida Statutes (2010), which is directly applicable to our analysis. That statute provides, in pertinent part:
 

 Nothing contained in this section shall prevent any county ... from enacting any ordinance relating to animal control ... which is identical to the provisions of this chapter or any other state law, except as to penalty. However, no county ... ordinance relating to animal control ... shall conflict with the provisions of this chapter or any other state law.
 

 (Emphasis added.) Together, sections 828.27(7) and 767.14 clarify that the state has not preempted the area of animal control and, although local governments may enact them own ordinances regarding dangerous dogs, those ordinances must not conflict with state law. In other words, Broward County does not have a free hand in the area of animal control.
 

 With the case law and statutory framework in mind, we now turn to the ordinances at issue.
 

 The definition of the term “dangerous dog” in Broward ordinance section 4-2(k)(2) is in clear conflict with the definition set forth in section 767.11(l)(b). The legislature expressly defined a dangerous
 
 *1181
 
 dog as having more than once severely injured or killed a domestic animal. Bro-ward’s designation of Mercedes as a dangerous dog pursuant to its own definition in section 4-2(k)(2) cannot stand. Nothing in section 767.14, section 828.27(7), or general conflict law authorized Broward to alter the definition of the statutory term “dangerous dog.”
 
 See Nicholson,
 
 600 So.2d at 1103. Since Broward’s definition of dangerous dog in section 4-2(k)(2) cannot coexist with the definition provided in section 767.11(l)(b), the ordinance and statute are in conflict. Accordingly, the definition of “dangerous dog” in Broward County ordinance section 4-2(k)(2) is null and void.
 

 The argued conflict between section 767.13 and Broward County ordinance section 4-12(j)(2), however, is not as clear. Section 767.13(1) requires the destruction of a dog that has previously been declared dangerous if it attacks or bites a domestic animal without provocation. Mercedes was not previously declared dangerous, so that section is inapplicable. Section 767.13(2) requires the destruction of a dog not previously declared dangerous only if it attacks and causes severe injury or death to a human. Mercedes did not attack a human, so that section is also inapplicable. Broward ordinance section 4-12(j)(2) substantially mirrors section 767.13(2) insofar as it refers to attacks on humans, but it additionally requires the destruction of a dog not previously declared dangerous when it causes the death of a domestic animal.
 

 As noted previously, Florida requires a dog’s destruction if it has killed at least three domestic animals.
 
 See
 
 767.11(l)(b); 767.13(1). Although Broward has not authorized an action that the legislature has expressly forbidden,
 
 see Mulligan,
 
 934 So.2d at 1247, the destruction of a dog that has killed only a single domestic animal is forbidden when section 767.13 is read together with sections 767.11(l)(b) and 828.27(7).
 
 See Dep’t of Children Family Servs. v. Leons,
 
 948 So.2d 988 (Fla. 4th DCA 2007) (courts must read statutes in pari materia to give meaning to all provisions).
 

 Generally, it is not a conflict if an ordinance is more stringent than a statute or regulates an area not covered by the statute.
 
 City of Kissimmee v. Fla. Retail Fed’n, Inc.,
 
 915 So.2d 205, 208-09 (Fla. 5th DCA 2005). Broward ordinance section 4-12(j)(2), however, regulates an area that is covered by state law. By requiring the destruction of a dog that has killed a single animal, Broward has vitiated the framework for dealing with dog attacks on other domestic animals that is set forth in chapter 767.
 
 See
 
 767.11(l)(b); 767.13. If killing a single animal is insufficient to merit the designation of a dog as dangerous per chapter 767, then Broward cannot require a dog’s destruction for that same act. By enacting an ordinance requiring the destruction of such dogs, Broward circumvented the clear procedural requirements of chapter 767. Accordingly, section 4-12(j)(2) is in conflict with state law.
 

 For the foregoing reasons, we conclude that Broward County ordinance sections 4-2(k)(2) and 4 — 12(j)(2) are null and void insofar as they conflict with state law. Accordingly, we reverse the decision of the trial court and remand for entry of final summary judgment in favor of Hoesch and South Florida Siberian Husky Rescue, Inc.
 

 Reversed and remanded.
 

 TAYLOR and GERBER, JJ., concur.