DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HOLLYWOOD PARK APARTMENTS SOUTH, LLC,**
Appellant,

v.

**CITY OF HOLLYWOOD, FLORIDA,**
Appellee.

No. 4D22-1072

[April 19, 2023]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Keathan B. Frink, Judge; L.T. Case No. CACE19-011778 (12).

Melissa A. Giasi and Erin M. Berger of Giasi Law, P.A., Tampa, and John M. Bernazzoli, Hollywood, for appellant.

Kendra S. Breeden of City Attorney's Office, Hollywood, for appellee.

LEVINE, J.

The City of Hollywood, which administers the municipal water utility, advised appellant that its water consumption readings had been inaccurate for a five-year period because of a defective meter. The city demanded repayment based on a 2014 ordinance governing how the city bills for water consumption when the customer's meter is determined to be defective and, as a result, inaccurate. Appellant filed an action for declaratory relief. The trial court found that the 2014 version of the ordinance applied, upheld the constitutionality of the ordinance, and found the city properly calculated the repayment amount. We find that the trial court did not err, except by failing to use the plain language of the 2014 ordinance when determining the amount of usage to be billed due to a defective meter. Thus, we reverse and remand for a recalculation of "the average monthly usage for the previous 12 months" that preceded the period, as identified by the city, when the meter was not functioning properly. As to all other issues, we affirm.[1]

_____

[1] As to the remaining issue alleging that the trial court granted relief not requested, we affirm without further comment.

In July 2017, appellant, an apartment complex with 31 units, received a letter from the city advising that a defective meter caused incorrect water consumption readings for a five-year period from June 10, 2011, to May 20, 2016. According to the letter, the city replaced the meter and recalculated the charges "based on the average of the previous twelve months of actual readings," resulting in an additional charge of $110,083.35.

In support of back-billing, the letter cited the 2014 amendment to section 57.075(B) of the Hollywood Code of Ordinances, which states:

> In case the meter has been found to be defective or has ceased to register, the amount of usage to be billed for the period that the meter was not functioning properly shall be determined by taking the average monthly usage for the previous 12 months. The city can bill for past unbilled usage as herein determined for a period of up to 60 months.

The previous version of the ordinance, which was enacted in 2005, provided:

> In case the meter has been found to be defective or has ceased to register, the amount of usage to be billed for the period that the meter was not functioning properly shall be determined by taking the average monthly usage recorded by the new or repaired meter for a minimum of 90 days. The city can bill for past unbilled usage as herein determined for a period of up to 12 months.

Appellant filed an action for declaratory relief. The parties filed competing motions for summary judgment. Appellant argued that the correct ordinance to be utilized was the 2005 ordinance and that the 2014 ordinance was unconstitutional. Further, appellant argued that even under the 2014 ordinance, the city failed to follow the plain language of the ordinance.

During a hearing, appellant presented testimony from a supervisor of the city's utility department. The supervisor calculated appellant owed $110,083.35 for the five-year period from June 10, 2011, to May 20, 2016. The supervisor used May 2016 as the start date and calculated backwards five years because May 2016 is when the meter was replaced, and the ordinance permits billing for the past five years.

2

In calculating appellant's average monthly usage, the supervisor selected 12 months of "actual usage prior to the meter malfunction." The supervisor excluded months with zero usage, months that did not include a full billing cycle, and months that involved credits. She excluded an additional month for a reason she could not recall. The 12 months the supervisor selected consisted of one month from 2011, three months from 2010, five months from 2006, and three months from 2005. The consumption history report, which was attached to the demand letter and presented as evidence during the summary judgment hearing, shows the 12 months the city selected and is included as an appendix to this opinion.

The trial court found the 2014 version of the ordinance applied, rejected appellant's constitutionality challenge, and found competent evidence demonstrating how the city calculated the amount billed. Appellant appealed.

We review de novo the constitutionality of an ordinance. *Fla. Hosp. Waterman, Inc. v. Buster*, 984 So. 2d 478, 485 (Fla. 2008). "A duly enacted ordinance of a local government is presumed valid, and the party challenging it carries the burden of establishing its invalidity." *Hoesch v. Broward County*, 53 So. 3d 1177, 1180 (Fla. 4th DCA 2011). "[A]n appellate court will indulge every reasonable presumption in favor of an ordinance's constitutionality." *Id.*

We review de novo issues of statutory interpretation. *United Auto. Ins. Co. v. Chironex Enters., Inc.*, 352 So. 3d 341, 343 (Fla. 4th DCA 2022). Summary judgment is also subject to the de novo standard of review. *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Finally, we review de novo the trial court's determination of which version of an ordinance applies. *Townsend v. R.J. Reynolds Tobacco Co.*, 192 So. 3d 1223, 1225 (Fla. 2016). "[T]he issue of whether a statute applies retroactively is a question of law reviewed de novo." *Bunin v. Matrixx Initiatives, Inc.*, 197 So. 3d 1109, 1110 (Fla. 4th DCA 2016).

Appellant argues that the 2014 version of section 57.075(B) was unconstitutional as applied. Appellant argues that the ordinance was unconstitutionally vague because it gave the city discretion whether to bill for unpaid water usage and how many months to bill for. The ordinance states the city "*can bill* for past unbilled usage as herein determined for a period of *up to 60 months.*" *Id.* (emphasis added). Appellant, however, never argued this particular point to the trial court. Significantly, an "as applied" challenge to the constitutionality of an ordinance is "subject to the rules of preservation." *Fla. Dep't of Agric. & Consumer Servs. v. Mendez*, 98 So. 3d 604, 608 (Fla. 4th DCA 2012). Therefore, this argument

is not preserved. *Sunset Harbour Condo. Ass'n v. Robbins*, 914 So. 2d 925, 928 (Fla. 2005).

However, even if this argument had been preserved, which it was not, it still remains without merit. Ironically, the 2005 version of the ordinance, which appellant argues should control, contains the same type of discretionary language. That ordinance states: "The city *can bill* for past unbilled usage as herein determined for a period of *up to 12 months*." (emphasis added). Regardless, simply because the ordinance gives the city the option to bill for unpaid water usage, and how many months to bill for, does not render the ordinance unconstitutionally vague. *See State v. Werner*, 402 So. 2d 386, 387 (Fla. 1981) (recognizing that the use of discretionary language, such as "may" or can, does not automatically render a statute unconstitutionally vague).

Additionally, appellant argues that the retroactive application of the 2014 ordinance was unconstitutional as applied because the city deemed the water meter defective in 2011; therefore, appellant claims, the 2005 ordinance should have been utilized instead. This argument, unlike the previous "as applied" challenge, was raised below and therefore is preserved. Although appellant frames this issue as a question of constitutionality, appellant is essentially arguing that the trial court applied the wrong ordinance and that the trial court should have applied the 2005 version of the ordinance instead of the 2014 version. We disagree.

The trial court properly found the 2014 version controlled. "A cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. (2016). Generally, "the applicable version of a statute is the version in effect at the time a cause of action accrues." *R.J. Reynolds Tobacco Co. v. Sheffield*, 266 So. 3d 1230, 1233 (Fla. 5th DCA 2019), *approved*, 329 So. 3d 114 (Fla. 2021). Here, the city sought to recover for a period from June 10, 2011, to May 20, 2016. Thus, the last element constituting the cause of action occurred in May 2016. As such, the 2014 ordinance would control.

The fact that the city sought payment for some dates preceding the amendment would not change this result. The 2014 ordinance stated that it was "in full force and effect immediately upon its passage and adoption." Additionally, the terms of the 2014 ordinance permitted back-billing up to 60 months.

The city, in enacting the 2014 ordinance, expressed an intent, by the text of the ordinance, for the amendment to operate retroactively to the

extent the amendment stated it was effective immediately and permitted back-billing for the preceding 60 months. *See Buster*, 984 So. 2d at 487. Thus, the amended ordinance specifically contemplated being able to recover undercharges for the past five years.

Appellant's focus on 2011 overlooks the fact that the city also sought to back-bill for dates in 2014, 2015, and 2016—dates which occurred after the 2014 amendment. Under appellant's interpretation, the city would not have been able to bill for 60 months of past unbilled usage until 2019— five years after the ordinance's enactment. Otherwise, the time period of billing would proceed the 2014 amendment. This interpretation is incorrect and contrary to the plain language of the 2014 amendment.

Finally, appellant argues that the trial court erred in failing to apply the plain language of the 2014 ordinance when calculating the average monthly water usage due to the defective water meter. On this, we agree. Instead of "taking the average monthly usage for the previous 12 months," the city utilized its own formula untethered from the plain language of the 2014 ordinance. Thus, we find the trial court erred in approving the city's created formula for determining the average monthly usage.

In interpreting an ordinance, the starting point of our analysis is the ordinance's plain language. *Chironex Enters.*, 352 So. 3d at 344. A court generally need not resort to other rules of statutory construction when the ordinance is unambiguous. *Id.* However, in interpreting a statute, courts are not required "to make a threshold determination of whether a term has a 'plain' or 'clear' meaning in isolation, without considering the statutory context and without the aid of whatever canons might shed light on the interpretive issues in dispute." *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022).

Where the words of a statute are plain and unambiguous and convey a definite meaning, courts must read the statute as written. *Nicoll v. Baker*, 668 So. 2d 989, 990-91 (Fla. 1996). "Where a statute does not specifically define words of common usage, such words must be given their plain and ordinary meaning." *Se. Fisheries Ass'n v. Dep't of Nat'l Res.*, 453 So. 2d 1351, 1353 (Fla. 1984). "[T]he Legislature must be presumed to know the action it is taking when amending a statute." *State, Dep't of Fin. Servs. v. Danahy & Murray, P.A.*, 246 So. 3d 466, 470 (Fla. 1st DCA 2018) (citing *Bd. of Tr., Jacksonville Police & Fire Pension Fund v. Lee*, 189 So. 3d 120, 125 (Fla. 2016)).

In interpreting this ordinance, like a statute, the Florida Supreme Court has given us clear guidance:

[W]e follow the "supremacy-of-text principle"—namely, the principle that "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012). We also adhere to Justice Joseph Story's view that "every word employed in [a legal text] is to be expounded in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it." *Advisory Op. to Governor re Implementation of Amendment 4, the Voting Restoration Amendment*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting Joseph Story, *Commentaries on the Constitution of the United States* 157-58 (1833), *quoted in* Scalia & Garner, Reading Law at 69).

We thus recognize that the goal of interpretation is to arrive at a "fair reading" of the text by "determining the application of [the] text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." Scalia & Garner, *Reading Law* at 33.

*Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946-47 (Fla. 2020).

As previously stated, the 2014 version of section 57.075(B) provides:

In case the meter has been found to be defective or has ceased to register, *the amount of usage to be billed for the period that the meter was not functioning properly shall be determined by taking the average monthly usage for the previous 12 months.* The city can bill for past unbilled usage as herein determined for a period of up to 60 months.

(emphasis added).

Given the wording of the ordinance, "the previous 12 months" necessarily refers to the period immediately preceding the unbilled usage period for which the city sought additional payment due to the meter malfunction. In other words, the look-back period commences from the earliest date of the meter malfunction period identified by the city and then goes backwards in time 12 months, as stated in the ordinance. In the instant case, the city identified June 10, 2011, to May 20, 2016, as the period of meter malfunction. Because the earliest date of meter

6

malfunction was June 2011, "the previous 12 months" would commence in May 2011. Thus, "the previous 12 months" for purposes of calculating "the average monthly usage" would be the period from June 2010 to May 2011.

A "fair reading" of the 2014 ordinance requires us to consider the "previous 12 months." The ordinance does not say the previous 12 months of "usage," the previous 12 months reflecting "actual water usage," the previous 12 months with the "highest amount of water usage," or the 12 months with a "working water meter." Rather, we are constrained to follow the ordinance, as was enacted by the local legislative body. *See Tucker v. Fitzgerald*, 247 So. 2d 459, 460 (Fla. 4th DCA 1971).

Again, the city identified June 10, 2011, to May 20, 2016, as the "period the meter was not functioning properly." The plain language of the 2014 ordinance contemplates taking the average monthly usage for "the previous 12 months" to determine the amount of usage to be billed. However, the city used only one month in the prior 12-month period of June 2010 through May 2011. The city excluded nine months from the previous 12 months because the water meter indicated no consumption. Another month was excluded without explanation, and another month was excluded because it did not reflect a full billing cycle for a monthly bill. Eventually, the city's representation of the "previous 12 months" ended up consisting of billing months from October 2005 through May 2006, March through May 2010, and March 2011. This hodge-podge of months spanned more than five years, and more than a decade before the May 20, 2016, date when the water meter was replaced. The consumption history report, which is included as an appendix to this opinion, shows the 12 months the city handpicked over this lengthy period of time. Finally, even if the city had rational arguments to justify finding 12 months of usage over a ten-year period, it still clearly runs counter to the plain language of the 2014 ordinance.

Once again, had the city or the trial court followed the 2014 ordinance, the city would have used the 12 previous months, and specifically the period from June 2010 through May 2011. If the city wanted to use any previous 12 months, then the 2014 ordinance would have stated just that. "[C]ourts cannot judicially alter the wording of statutes where the Legislature clearly has not done so." *Fla. Dep't of Revenue v. Fla. Mun. Power Agency*, 789 So. 2d 320, 324 (Fla. 2001). Nor may the city improperly read requirements into the ordinance that do not exist. *Boulis v. Blackburn*, 16 So. 3d 186, 189 (Fla. 4th DCA 2009). The city's calculation may not be based on an "unauthorized formula devised to fit the circumstances of this case." *Indus. Fiberglass Mfrs. & Emps. Cas. Co.*

7

*v. Davis*, 460 So. 2d 998, 1000 (Fla. 1st DCA 1984); *see also Sherwood Park, Ltd. v. Meeks*, 234 So. 2d 702, 703 (Fla. 4th DCA 1970) (reversing where "tax assessor was not authorized to promulgate a formula in derogation to the statute"), *approved sub nom. Markham v. Sherwood Park Ltd.*, 244 So. 2d 129 (Fla. 1971).

In summary, we find that the trial court did not err in finding that the 2014 ordinance was the operative ordinance. We also find, however, that the trial court erred by utilizing the city's method of determining the average monthly usage, which did not follow the plain language of the 2014 ordinance. Thus, we reverse and remand for the trial court to determine the average monthly usage for the previous 12 months, from June 2010 to May 2011, pursuant to the plain language of the 2014 ordinance.

*Affirmed in part, reversed in part, and remanded with instructions.*

WARNER and GERBER, JJ., concur.

*      *      *

**Not final until disposition of timely filed motion for rehearing.**

**APPENDIX[2]**

---

[2] The following consumption history report shows appellant's usage over a period of years. The months the city selected in its calculations include a checkmark, while months the city excluded have an "X" or 0 (zero) usage.

| Account # Service | Man Meter # | Cd | Read Date | By | Bill# | Parcel Curr Read | Usage | Repl Usage | Location Billed Usage | Charge Amt Billed Amt | Status Days |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 1615 14 | .00 | CURRENT |
| 1000 | 1 NEP 31559796 | A | 05/11/2011 | | 14766346 | 83,400 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 04/12/2011 | | 14766345 | 83,400 | 2,100 | 0 | 2,100 X | .00 / .00 | 31 |
| 1000 | 1 NEP 31559796 | A | 03/12/2011 | | 14766344 | 81,300 | 22,100 ✓ | 0 | 22,100 ✓ | .00 / .00 | 30 |
| 1000 | 1 NEP 31559796 | A | 02/10/2011 | | 14766343 | 59,200 | 9,700 | 0 | 9,700 X | .00 / .00 | (14) |
| 1000 | 1 NEP 31559796 | A | 01/27/2011 | | 14766342 | 66,800 | 0 | 0 | 0 | .00 / .00 | 15 |
| 1000 | 1 NEP 31559796 | A | 01/27/2011 | | 14766341 | 49,500 | 0 | 0 | 0 | .00 / .00 | 15 |
| 1000 | 1 NEP 31559796 | A | 01/12/2011 | | 14766340 | 66,800 | 0 | 0 | 0 | .00 / .00 | 33 |
| 1000 | 1 NEP 31559796 | A | 12/10/2010 | | 14766339 | 66,800 | 0 | 0 | 0 | .00 / .00 | 30 |
| 1000 | 1 NEP 31559796 | A | 11/10/2010 | | 14766338 | 66,800 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 10/12/2010 | | 14766337 | 66,800 | 0 | 0 | 0 | .00 / .00 | 32 |
| 1000 | 1 NEP 31559796 | A | 09/10/2010 | | 14766336 | 66,800 | 0 | 0 | 0 | .00 / .00 | 30 |
| 1000 | 1 NEP 31559796 | A | 08/11/2010 | | 14766335 | 66,800 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 07/13/2010 | | 14766334 | 66,800 | 0 | 0 | 0 | .00 / .00 | 32 |
| 1000 | 1 NEP 31559796 | A | 06/11/2010 | | 14766333 | 66,800 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 05/13/2010 | | 14766332 | 66,800 | 18,900 ✓ | 0 | 18,900 ✓ | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 04/14/2010 | | 14766331 | 47,900 | 24,500 ✓ | 0 | 24,500 ✓ | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 03/16/2010 | | 14766330 | 23,400 | 18,900 ✓ | 0 | 18,900 ✓ | .00 / .00 | 32 |
| 1000 | 1 NEP 31559796 | A | 02/12/2010 | | 14766329 | 4,500 | 4,500 | 0 | 4,500 X | .00 / .00 | (8) |
| 1000 | 1 NEP 31559796 | A | 02/04/2010 | | 14766328 | 148,170 | 70 | 0 | 70 X | .00 / .00 | 22 |
| 1000 | 1 NEP 31559796 | A | 02/04/2010 | | 14766327 | | 0 | 0 | 0 | .00 / .00 | 22 |
| 1000 | 1 NEP 31559796 | A | 01/13/2010 | | 14766326 | 148,100 | 0 | 0 | 0 | .00 / .00 | 33 |
| 1000 | 1 NEP 31559796 | A | 12/11/2009 | | 14766325 | 148,100 | 0 | 0 | 0 | .00 / .00 | 31 |
| 1000 | 1 NEP 31559796 | A | 11/10/2009 | | 14766324 | 148,100 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 10/12/2009 | | 14766323 | 148,100 | 0 | 0 | 0 | .00 / .00 | 32 |
| 1000 | 1 NEP 31559796 | A | 09/10/2009 | | 14766322 | 148,100 | 0 | 0 | 0 | .00 / .00 | 30 |
| 1000 | 1 NEP 31559796 | A | 08/11/2009 | | 14766321 | 148,100 | 0 | 0 | 0 | .00 / .00 | 32 |

| Account # Service | Man Meter # | Cd | Read Date | By | Bill# | Parcel Curr Read | Usage | Repl Usage | Location Billed Usage | Charge Amt Billed Amt | Status Days |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 1615 14 | .00 | CURRENT |
| 1000 | 1 NEP 31559796 | A | 07/10/2009 | | 14766320 | 148,100 | 0 | 0 | 0 | .00 / .00 | 30 |
| 1000 | 1 NEP 31559796 | A | 06/10/2009 | | 14766319 | 148,100 | 0 | 0 | 0 | .00 / .00 | 30 |
| 1000 | 1 NEP 31559796 | A | 05/11/2009 | | 14766318 | 148,100 | 0 | 0 | 0 | .00 / .00 | 31 |
| 1000 | 1 NEP 31559796 | A | 04/10/2009 | | 14766317 | 148,100 | 0 | 0 | 0 | .00 / .00 | 30 |
| 1000 | 1 NEP 31559796 | A | 03/11/2009 | | 14766316 | 148,100 | 0 | 0 | 0 | .00 / .00 | 30 |
| 1000 | 1 NEP 31559796 | A | 02/09/2009 | | 14766315 | 148,100 | 0 | 0 | 0 | .00 / .00 | 32 |
| 1000 | 1 NEP 31559796 | A | 01/08/2009 | | 14766314 | 148,100 | 0 | 0 | 0 | .00 / .00 | 34 |
| 1000 | 1 NEP 31559796 | A | 12/05/2008 | | 14766313 | 148,100 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 11/06/2008 | | 14766312 | 148,100 | 0 | 0 | 0 | .00 / .00 | 28 |
| 1000 | 1 NEP 31559796 | A | 10/09/2008 | | 14766311 | 148,100 | 0 | 0 | 0 | .00 / .00 | 31 |
| 1000 | 1 NEP 31559796 | A | 09/08/2008 | | 14766310 | 148,100 | 0 | 0 | 0 | .00 / .00 | 31 |
| 1000 | 1 NEP 31559796 | A | 08/08/2008 | | 14766309 | 148,100 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 07/10/2008 | | 14766308 | 148,100 | 0 | 0 | 0 | .00 / .00 | 30 |
| 1000 | 1 NEP 31559796 | A | 06/10/2008 | | 14766307 | 148,100 | 0 | 0 | 0 | .00 / .00 | 32 |
| 1000 | 1 NEP 31559796 | A | 05/09/2008 | | 14766306 | 148,100 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 04/10/2008 | | 14766305 | 148,100 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 03/12/2008 | | 14766304 | 148,100 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 02/12/2008 | | 14766303 | 148,100 | 0 | 0 | 0 | .00 / .00 | 32 |
| 1000 | 1 NEP 31559796 | A | 01/11/2008 | | 14766302 | 148,100 | 0 | 0 | 0 | .00 / .00 | 32 |
| 1000 | 1 NEP 31559796 | A | 12/10/2007 | | 14766301 | 148,100 | 0 | 0 | 0 | .00 / .00 | 33 |
| 1000 | 1 NEP 31559796 | A | 11/07/2007 | | 14766300 | 148,100 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 10/09/2007 | | 14766299 | 148,100 | 0 | 0 | 0 | .00 / .00 | 28 |
| 1000 | 1 NEP 31559796 | A | 09/11/2007 | | 14766298 | 148,100 | 0 | 0 | 0 | .00 / .00 | 33 |
| 1000 | 1 NEP 31559796 | A | 08/09/2007 | | 14766297 | 148,100 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 NEP 31559796 | A | 07/11/2007 | | 14766296 | 148,100 | 0 | 0 | 0 | .00 / .00 | 29 |

| Account # Service | Man | Meter # | Customer Cd | Name Read Date | By | Bill# | Parcel Curr Read | Usage | Repl Usage | Location Billed Usage | Charge Amt Billed Amt | Status Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 1615 14 | | CURRENT |
| 1000 | 1 | NEP 31559796 | A | 06/12/2007 | | 14766295 | 148,100 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 | NEP 31559796 | E | 05/14/2007 | | 14766294 | 148,100 | 0 | 0 | 0 | .00 / .00 | 35 |
| 1000 | 1 | NEP 31559796 | A | 04/09/2007 | | 14766293 | 148,100 | 0 | 0 | 0 | .00 / .00 | 28 |
| 1000 | 1 | NEP 31559796 | A | 03/12/2007 | | 14766292 | 148,100 | 0 | 0 | 0 | .00 / .00 | 31 |
| 1000 | 1 | NEP 31559796 | A | 02/09/2007 | | 14766291 | 148,100 | 0 | 0 | 0 | .00 / .00 | 29 |
| 1000 | 1 | NEP 31559796 | A | 01/11/2007 | | 14766290 | 148,100 | 0 | 0 | 0 | .00 / .00 | 35 |
| 1000 | 1 | NEP 31559796 | A | 12/07/2006 | | 14766289 | 148,100 | 0 | 0 | 0 | .00 / .00 | 31 |
| 1000 | 1 | NEP 31559796 | A | 11/06/2006 | | 14766288 | 148,100 | 0 | 0 | 0 | .00 / .00 | 31 |
| 1000 | 1 | NEP 31559796 | A | 10/06/2006 | | 14766287 | 148,100 | 0 | 0 | 0 | .00 / .00 | 28 |
| 1000 | 1 | NEP 31559796 | A | 09/08/2006 | | 14766286 | 148,100 | -5,591 | 0 | -5,591 X | .00 / .00 | 31 |
| 1000 | 1 | NEP 31559796 | E | 08/08/2006 | | 14766285 | 153,691 | 5,591 | 0 | 5,591 X | .00 / .00 | 32 |
| 1000 | 1 | NEP 31559796 | A | 07/07/2006 | | 14766284 | 148,100 | 0 | 0 | 0 | .00 / .00 | 30 |
| 1000 | 1 | NEP 31559796 | A | 06/07/2006 | | 14766283 | 148,100 | 0 | 0 | 0 | .00 / .00 | 30 |
| 1000 | 1 | NEP 31559796 | A | 05/08/2006 | | 14766282 | 148,100 | 15,900 | 0 | 15,900 ✓ | .00 / .00 | 31 |
| 1000 | 1 | NEP 31559796 | A | 04/07/2006 | | 14766281 | 132,200 | 25,899 | 0 | 25,899 ✓ | .00 / .00 | 28 |
| 1000 | 1 | NEP 31559796 | E | 03/10/2006 | | 14766280 | 106,301 | 13,478 | 0 | 13,478 ✓ | .00 / .00 | 29 |
| 1000 | 1 | NEP 31559796 | E | 02/09/2006 | | 14766279 | 92,823 | 19,023 | 0 | 19,023 ✓ | .00 / .00 | 29 |
| 1000 | 1 | NEP 31559796 | A | 01/11/2006 | | 14766278 | 73,800 | 17,400 | 0 | 17,400 ✓ | .00 / .00 | 34 |
| 1000 | 1 | NEP 31559796 | A | 12/08/2005 | | 14766277 | 56,400 | 6,800 | 0 | 6,800 ✓ | .00 / .00 | 30 |
| 1000 | 1 | NEP 31559796 | A | 11/08/2005 | | 14766276 | 49,600 | 36,804 | 0 | 36,804 ✓ | .00 / .00 | 29 |
| 1000 | 1 | NEP 31559796 | E | 10/10/2005 | | 14766275 | 12,796 | 3,096 | 0 | 3,096 ✓ | .00 / .00 | 30 |
| 1000 | 1 | NEP 31559796 | A | 09/10/2005 | | 14766274 | 9,700 | 9,700 | 0 | 9,700 X | .00 / .00 | 12 |
| 1000 | 1 | NEP 31559796 | A | 08/29/2005 | | 14766273 | 11,700 | 0 | 0 | 0 | .00 / .00 | 13 |
| 1000 | 1 | NEP 31559796 | A | 08/29/2005 | | 14766272 | | 0 | 0 | 0 | .00 / .00 | 13 |
| 1000 | 1 | NEP 31559796 | A | 08/16/2005 | | 14766271 | 11,700 | 0 | 0 | 0 | .00 / .00 | 35 |
| 1000 | 1 | NEP 31559796 | A | 07/12/2005 | | 14766270 | 11,700 | 0 | 0 | 0 | .00 / .00 | 34 |